**UNITED STATES of America, Plaintiff,**

v.

**Amy Lynn WALLS, Defendant.**

**Crim. No. 83–00042–E(H).**

United States District Court,
N.D. West Virginia,
Elkins Division.

March 20, 1984.

Thomas O. Mucklow, Asst. U.S. Atty., Elkins, W.Va., for plaintiff.

Allan N. Karlin, Morgantown, W.Va., for defendant.

MEMORANDUM OPINION
AND ORDER

HADEN, Chief Judge.

The Defendant, Amy Lynn Walls, was found guilty by a jury on May 17, 1983, of conspiring to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846 (Count One) and distributing cocaine in violation of 21 U.S.C. § 841(a)(1) (Count Three). The Defendant was acquitted of Count Two of the indictment which charged a violation of 21 U.S.C. § 812(c) (use of a communication facility to facilitate the distribution of a controlled substance). The Defendant was sentenced to three years on Count One and three years on Count Three, the terms of incarceration to run concurrently. Pending before the Court is Defendant's motion for a judgment of acquittal, or, in the alternative, for a new trial. See Rules 29(c) and 33 of the Federal Rules of Criminal Procedure.

The Defendant challenges her conspiracy conviction [1] on four grounds:

1. The Government failed to prove the existence of a conspiracy.

2. The Government failed to prove a single, overall conspiracy.

3. The conspiracy charge violated Defendant's Due Process rights.

4. The Court erred in instructing the jury concerning the conspiracy count.

The Court will address these issues in the order listed above.

I. *Failure to Prove the Existence of a Conspiracy*

■ Under 21 U.S.C. § 846 the essential element of a drug conspiracy is an agreement by two or more persons to violate the narcotics laws. *U.S. v. Watkins*, 662 F.2d 1090 (4th Cir.1981) *cert. denied* 455 U.S. 989, 102 S.Ct. 1613, 71 L.Ed.2d 849 (1982); *U.S. v. Diaz*, 655 F.2d 580 (5th Cir.1981); *U.S. v. Garcia*, 655 F.2d 59 (5th Cir.1981); *U.S. v. Peterson*, 524 F.2d 167 (4th Cir.

1975) *cert. denied* 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976). More precisely stated, a valid conviction under Section 846 requires "proof beyond a reasonable doubt that a conspiracy existed, that the accused knew of it, and with that knowledge, voluntarily became a part of it." [citations omitted] *U.S. v. Bland*, 653 F.2d 989, 996 (5th Cir.1981) *cert. denied* 454 U.S. 1055, 102 S.Ct. 602, 70 L.Ed.2d 592, *rehearing denied* 454 U.S. 1165, 102 S.Ct. 1043, 71 L.Ed.2d 323 (1982).

■ The standard for determining whether there was sufficient evidence of the existence of a conspiracy on which the jury could base its verdict of guilty is "the verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Hamling v. U.S.*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974) *quoting Glasser v. U.S.*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *U.S. v. Steed*, 674 F.2d 284, 286 (4th Cir.1982) (*en banc*). In applying this standard "the relevant question is whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). *See also U.S. v. Laughman*, 618 F.2d 1067 (4th Cir.1980) *cert. denied* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980). Prefatory to applying this standard, the Court will summarize the evidence presented at trial.[2]

Government witness Marshall Paul Rader testified that he had been involved in drug trafficking, including cocaine, for three years. Rader testified that he had a regular supplier of cocaine but that it was of poor quality. The Defendant, who had met Rader through his roommate, had contacted Rader "a few times" informing him she had a supply of good quality cocaine and inquired if Rader knew of anyone who wanted to buy some. After exchanging

---

1. The Defendant does not contest her conviction on the Section 841(a)(1) distribution charge.

2. All of the evidence reviewed herein was presented in the Government's case-in-chief. The Defendant exercised her right to remain silent and call no witnesses in her defense.

telephone calls, Rader responded he knew of no one at that time who was interested in purchasing Defendant's cocaine, but that he would call Defendant if he learned of anyone who might be interested.

At trial, Rader explained that although he was dealing cocaine almost exclusively for his regular supplier, he would on occasion attempt to get better quality cocaine for his friends. One such friend was Gregory L. Allen, who had attended school with Rader. Rader testified that Allen called him[3] and said he wanted to buy a quarter of an ounce of cocaine. Rader then called the Defendant at her residence in Morgantown, West Virginia, to notify her of same. The Defendant told Rader she could supply the cocaine and that she would deliver it later that evening. Rader then arranged for Allen to come to his house in Fairmont to execute the transaction.

Unbeknownst to Rader, Allen had agreed to cooperate with the West Virginia Department of Public Safety and the Drug Enforcement Administration in their narcotics investigations as part of a plea agreement following Allen's arrest by the Lewis County Sheriff's Department for possession of marijuana. As a result, Allen was accompanied to Rader's house that evening (June 6, 1981) by Trooper Harry G. Lucas, Jr. of the West Virginia Department of Public Safety. Lucas and Allen arrived at Rader's residence at approximately 9:30 p.m. Rader told them he did not have any

cocaine at that time but that "a girl" would bring it from Morgantown that evening. Lucas and Allen took this opportunity to leave the house, on the pretense of going out to purchase some beer, to leave Rader's residence and report the reason for the delay of the expected drug buy to the law enforcement officers maintaining surveillance outside Rader's house.

When Lucas and Rader returned to the house Rader informed them that he had called "the girl" in Morgantown and she was on her way with the cocaine. Shortly thereafter, the Defendant[4] arrived. The testimony of Lucas, Allen and Rader as to what transpired following Defendant's arrival was substantially identical: Rader and the Defendant went into a back bedroom for a few minutes and then called for Lucas and Allen. When the latter two entered the bedroom there was a celophane packet of cocaine lying on a desk. Allen sampled the cocaine by tasting it[5] and then Trooper Lucas paid Rader the previously agreed price of $525.00. Rader testified that he kept $25.00 or $50.00 of the purchase money and gave the balance to Defendant.

Another Government witness, Annette Underwood, testified that she had bought "downs"[6] and "pills" from Defendant "a couple of times" in 1982 and had purchased cocaine from the Defendant "a couple of times" beginning in July 1982, and ending in August, 1982.[7] The Government's last

---

**3.** The testimony of witnesses Lucas, Allen and Brightwell establishes the date of this call and subsequent drug transaction as June 6, 1981.

**4.** "The girl" who arrived at Rader's house was identified as the Defendant by Lucas, Allen and Rader. In addition to these three witnesses, Robert C. Brightwell, Special Agent for the D.E.A., who was one of the officers keeping watch outside Rader's residence, identified the Defendant as the female who arrived at Rader's house that evening.

**5.** There is no question that the substance contained in the packet was, in fact, cocaine. Government witness Joseph Hudak, III, a forensic analytical chemist with the D.E.A., testified that after conducting a series of laboratory tests he determined the white powder contained in the packet was "L" type cocaine of 52% purity.

**6.** During questioning by the Court, it was subsequently determined that the "downs" Underwood purchased from Defendant were nebutols.

**7.** The Court cautioned the jury at the time the testimony was adduced and at the conclusion of the case that the witness' testimony concerning the "downs" and "pills" could be considered only for the limited purposes enumerated in *Rule* 404(b) of the Federal Rules of Evidence. See *U.S. v. Hines*, 717 F.2d 1481 (4th Cir.1983); *U.S. v. Melia*, 691 F.2d 672 (4th Cir.1982); *U.S. v. Davis*, 657 F.2d 637 (4th Cir.1981); *U.S. v. Masters*, 622 F.2d 83 (4th Cir.1980); *U.S. v. Woods*, 484 F.2d 127 (4th Cir.1973) *cert. denied* 415 U.S. 979, 94 S.Ct. 1566, 39 L.Ed.2d 875 (1974).

witness, Roger Fortney, testified that he bought cocaine from the Defendant "a couple of times" *after* August, 1982.[8]

■ Reviewing the legal principles already discussed in light of the testimony recounted above, and the inferences[9] the jury could reasonably draw therefrom, it is apparent to the Court that the jury's verdict of guilty on Count One of the indictment is amply supported by the record. The evidence demonstrated, with convincing persuasiveness, that the Defendant and Rader agreed that the Defendant would supply Rader with cocaine for him to resell to a third party. This evidence, in and of itself, satisfies the essential element of a Section 846 conspiracy—that two or more persons agree to violate the narcotics laws. The Defendant's argument that there was insufficient evidence to support her conspiracy conviction is, therefore, without merit.

## II. *Failure to Prove a Single Conspiracy*

■ The Defendant argues that the Government "failed to provide any evidence that the acts of distribution were part of an overall agreement between [her] and any one person."[10] The Government, of course, has the burden of proving the single conspiracy as charged in the indictment. *U.S. v. Hines*, 717 F.2d at 1489. The standard to be applied in determining whether the Government has met this burden is the same as that used to test the sufficiency of the evidence to convict—"whether the evidence, when viewed in the light most favorable to the Government ... supports the jury's finding of a single conspiracy." *Id. quoting Glasser v. U.S.*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). If the Government's evidence does not meet this standard, the Defendant's conviction must be set aside only if the

proof of multiple conspiracies prejudiced the Defendant's substantial rights. *U.S. v. Berger*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *U.S. v. Hines*, 717 F.2d at 1489–90 (4th Cir.1983); *U.S. v. Coward*, 630 F.2d 229, 231 (4th Cir.1980); *U.S. v. Coward*, 669 F.2d 180, 183 (4th Cir.1982); *cert. denied* 456 U.S. 946, 102 S.Ct. 2014, 72 L.Ed.2d 470 (1982) *rehearing denied* 458 U.S. 1116, 102 S.Ct. 3499, 73 L.Ed.2d 1378 (1982).

■ The Defendant's argument is flawed because it completely ignores the overwhelming evidence establishing an agreement between the Defendant and Rader to distribute cocaine. As the Court's discussion above indicates, there was ample evidence to support the jury's finding that the Defendant did conspire to distribute cocaine. Therefore, the single conspiracy charged in Count One of the indictment was proved to the jury's satisfaction, which finding is supported by the record. Contrari-wise, there was no evidence indicating the Defendant entered into a second or third conspiracy with Fortney or Underwood, the other two persons to whom she distributed cocaine. Both Fortney and Underwood testified that the cocaine they purchased from Defendant was used exclusively for personal consumption. Their testimony on this point was uncontradicted. The Government's case, therefore, proved but one conspiracy.

Moreover, the Defendant's argument is also deficient in that the *Kotteakos* multiple conspiracy problem arises as a result of the "jury confusion stemming from the necessity to consider two conspiracies instead of just one" and the concomitant difficulty in separating the evidence applicable to each alleged conspirator. *U.S. v. Coward*, 669 F.2d at 183. *See also Kotteakos v. U.S.*, 328 U.S. 750, 772–74, 66 S.Ct. 1239,

---

**8.** The Court again cautioned the jury that because these purchases occurred after the alleged life span of the conspiracy (January, 1981, to August, 1982), the jury could only consider the witness' testimony for the limited purposes permitted by *Rule* 404(b). See n. 7, *supra*, and cases cited therein.

**9.** "The existence of the agreement, however, need not be proven by direct evidence, but may be inferred from the facts of the case." *U.S. v. Watkins*, 662 F.2d at 1097.

**10.** *See* Defendant's Memorandum of Law at p. 3.

1251–52, 90 L.Ed. 1557 (1946); *U.S. v. Jackson,* 696 F.2d 578, 582–89 (8th Cir.1982) *cert. denied* — U.S. ——, 103 S.Ct. 1531, 75 L.Ed.2d 952 (1983); *U.S. v. Portsmouth Paving Corp.,* 694 F.2d 312, 318 n. 7 (4th Cir.1982); *U.S. v. Coward,* 630 F.2d at 231; *U.S. v. Goss,* 329 F.2d 180, 184 (4th Cir. 1964). Because Defendant was the sole accused conspirator at trial, there could have been no "spillover" of evidence, properly applicable only to a co-conspirator, prejudicial to her. Therefore, the Court concludes that the Government proved the existence of the single conspiracy alleged in Count One of the indictment and that the Defendant's conviction on that count was not tainted by evidence pertaining to other conspiracies.

### III. *Conspiracy Charge Violated Defendant's Due Process Rights*

[7] The Defendant contends that the conspiracy charge, as alleged in the indictment and presented at trial, violated the Fifth Amendment's due process clause and the prohibition against double jeopardy. The Defendant's due process argument centers on what she perceives to be a lack of definition of the "scope, duration or character" of the conspiracy alleged. Defendant's double jeopardy argument is based on her contention that the conspiracy charge was sufficiently ambiguous so as to deprive her of her right to be free from subsequent prosecution for the same offense.[11]

The Supreme Court in *U.S. v. Debrow,* 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953) spoke to both issues the Defendant raises here:

"The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offence whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' *Cochran and Sayre v. U.S.,* 157 U.S. 286, 290 [15 S.Ct. 628, 630, 39 L.Ed. 704]; *Rosen v. U.S.,* 161 U.S. 29, 34 [16 S.Ct. 434, 435, 40 L.Ed. 606]."

346 U.S. at 376, 74 S.Ct. at 114 *quoting Hagner v. U.S.,* 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932). *See also Hamling v. U.S.,* 418 U.S. 87, 97, 117–18, 94 S.Ct. 2887, 2897, 2907–08, 41 L.Ed.2d 590 (1974).

After carefully reviewing Count One of the indictment and the bill of particulars supplied Defendant, the Court is satisfied that the Defendant was provided sufficiently detailed information concerning the conspiracy charge against her to notice her of the crime alleged and to enable her to prepare a defense. *See U.S. v. Duncan,* 598 F.2d 839, 848 (4th Cir.1979) *cert. denied* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979). The Court finds it significant that Defendant does not now claim surprise or prejudice resulting from any of the evidence presented at trial. The record of this action, as specifically reflected in defense counsel's able cross examination of the Government's witnesses, reveals Defendant was well prepared to defend the conspiracy charge and suffered from no lack of information regarding the offense charged in Count One.

Nor does the Court perceive a danger to Defendant's rights under the double jeopardy clause. Count One of the indictment charges the Defendant with conspiring to distribute cocaine in the Northern District of West Virginia from January, 1981, until August, 1982. The Defendant cannot be prosecuted again for this described offense. The trial, indictment and bill of particulars in this action will serve to define for what offenses the Defendant

---

11. Protection against a second prosecution after conviction is one of the three safeguards provided by the double jeopardy clause. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *U.S. v. Wilson,* 420 U.S. 332, 342, 343, 95 S.Ct. 1013, 1021, 43 L.Ed.2d 232 (1975).

may *not* be prosecuted in the future. As Judge Craven noted in *U.S. v. Covington*, 411 F.2d 1087, 1089 (4th Cir.1969):

"[W]e held in *Tincher v. Boles*, [364 F.2d 497, 498 (4th Cir.1966)] that 'Any prosecution under a subsequent indictment would be foreclosed if the offense charged was one which would have supported a conviction under the earlier indictment.' 364 F.2d at 498. The transcript of Covington's trial is available and, should it ever be necessary to do so, it may readily be determined from that transcript whether a newly charged offense was one 'which would have supported a conviction under the earlier indictment.' "

Therefore, the Court concludes that the instant prosecution does not violate Defendant's right not to be twice held in jeopardy for the same offense.

### IV. *The Jury Instructions*

Defendant's final challenge to her conspiracy conviction goes to the Court's charge to the jury. Defendant asserts the Court's instructions to the jury on the conspiracy count were deficient because the jury was not instructed that proof of a mere buyer-seller relationship alone is not sufficient to sustain a conviction for conspiracy.[12] The Court cannot agree.

 The Court recognizes that a single buyer-seller relationship does not constitute a conspiracy to distribute narcotics. *See e.g., U.S. v. Creamer*, 555 F.2d 612, 615 (7th Cir.1977) *cert. denied* 434 U.S. 833, 98 S.Ct. 118, 54 L.Ed.2d 93 (1977); *U.S. v. Grunsfeld*, 558 F.2d 1231, 1235 (6th Cir. 1977) *cert. denied* 434 U.S. 872, 98 S.Ct. 219, 54 L.Ed.2d 152 (1977) (collecting cases). As is apparent from the Court's

summary of the evidence, however, the Government proved much more than a single buyer-seller relationship and, therefore, Defendant cannot successfully attack her conviction on this basis. Moreover, the Court properly instructed the jury concerning the essential elements of a Section 846 conspiracy consistent with the cases cited *supra* at p. 1268. The jury, then, was correctly instructed as to what the Government had to prove to establish the offense alleged in Count One; there was no need for the Court to further instruct the jury in the negative as to what *does not* constitute a conspiracy.

### V. *Conclusion*

For the reasons discussed above, the Defendant's motion for a judgment of acquittal, or, in the alternative, for a new trial, is hereby denied.

---

12. The Court notes here that at no time before the charge to the jury did Defendant proffer to the Court a proposed "buyer-seller" instruction. Just before the trial was to reconvene for closing arguments and jury instructions, Defendant's counsel informally notified the Court that he desired an instruction to the effect that a single isolated drug transaction does not constitute a conspiracy to distribute. This "proposed instruction" was not given because a single transaction *can* be sufficient to implicate a De-

fendant in a distribution conspiracy. The Second Circuit recognized this in *U.S. v. Ramirez*, 482 F.2d 807, 816 (2d Cir.1973) *cert. denied* 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973):

"While [Defendant's] participation may have been limited to 'a single act', as she contends, that act was the consummation of the crimes charged and the jury could reasonably have inferred that [Defendant] knowingly and intentionally participated in the conspiracy."