**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 96-4789

HENRY FRANK MCLEAN,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 97-4775

KAREN ELAINE BLAND,
Defendant-Appellant.

Appeals from the United States District Court
for the Middle District of North Carolina, at Durham.
N. Carlton Tilley, Jr., District Judge.
(CR-96-6)

Argued: May 8, 1998

Decided: December 17, 1998

Before ERVIN and MOTZ, Circuit Judges, and BEEZER,
Senior Circuit Judge of the United States Court of Appeals
for the Ninth Circuit, sitting by designation.

_____

Reversed and remanded by unpublished opinion. Judge Ervin wrote
the opinion, in which Judge Motz and Senior Judge Beezer joined.

_____

**COUNSEL**

**ARGUED:** Michael Andrew Grace, MICHAEL A. GRACE, P.A., Winston-Salem, North Carolina, for Appellant McLean; Bruce Alan Lee, BRUCE A. LEE, P.A., Greensboro, North Carolina, for Appellant Bland. Paul Alexander Weinman, Assistant United States Attorney, Winston-Salem, North Carolina, for Appellee. **ON BRIEF:** Walter C. Holton, Jr., United States Attorney, Winston-Salem, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

ERVIN, Circuit Judge:

Henry McLean and Karen Bland were both convicted of a 26-year conspiracy to distribute cocaine hydrochloride, cocaine base, and marijuana. McLean's primary contention on appeal is that the district court erred by not granting his motion for judgment of acquittal because the United States offered insufficient evidence to prove McLean engaged in a single conspiracy lasting 26 years. Bland challenges the sufficiency of the evidence regarding her participation in the latter stages of the alleged conspiracy and also argues that she was entitled to a jury instruction on withdrawal from the conspiracy.

We find that the United States failed to prove the existence of any conspiracy lasting 26 years. We therefore reverse McLean's judgment of conviction and remand for entry of a judgment of acquittal. Bland, who was indicted and convicted of engaging in the same alleged 26-year conspiracy, was also erroneously convicted. We therefore reverse Bland's judgment of conviction and remand for entry of a judgment of acquittal.

2

I.

Henry McLean, Karen Bland, Robert Jerome Murchison, and five others (Jerome Jewitt Johnson, Sr., James Marshall McLean, Michael Anthony Taylor, Ronovan Kennedy Berryman, and Dwight Levern Morgan) were indicted on January 29, 1996, for conspiracy to distribute cocaine hydrochloride, cocaine base, and marijuana. The government claimed that McLean and the others conspired from in or about 1970 to January 1996 to sell cocaine, cocaine base (crack), and marijuana, primarily in Sanford, North Carolina, which is in Lee County.

McLean's initial drug operation in the early 1970s involved sales of marijuana and various forms of LSD. During this time, he gave marijuana to his cousin, Robert Jerome Murchison, who was visiting Sanford from New England. McLean went to prison in 1973, and was paroled in 1974. Sometime after his release from prison, he began to sell cocaine, and still sold marijuana and LSD. In the early 1980s, he apparently employed other persons to pick up drugs in Fayetteville, North Carolina, including Tony Wade Johnson and Fletcher McBride, though none of those persons was named in the indictment.

In late 1982, McLean sold marijuana to an undercover officer and was subsequently arrested and sent to state prison. After his release in 1985, he did not re-enter the drug market for some time. Then, in approximately 1987, he began to sell crack and cocaine in Lee County. McLean used numerous rented locations, including a place referred to as "the shop" at 1801 Garden Street, to facilitate his drug distribution business. He generally sold "individual-use" packets of drugs.

Murchison, McLean's cousin, returned to Lee County from Massachusetts in 1987. He immediately began working for McLean, and was primarily employed in "watching out" for Karen Bland, who worked as McLean's assistant starting in about 1987, to make sure she was not robbed or assaulted while she sold drugs for McLean. Murchison also traveled various places, such as Hoke County, to obtain drugs for sale in Sanford. McLean sometimes accompanied Murchison, as did co-defendant Jerome Johnson.

For some time in 1988, Murchison and Bland sold crack and cocaine from the loft of "the shop." After several months, McLean

3

had a falling-out with one of the co-conspirators, Jerome Johnson, who then persuaded Murchison to sell cocaine with him. McLean and Murchison feuded over Murchison's "desertion," but later made up their quarrel. Murchison and Jerome Johnson, however, remained business rivals of McLean.

Bland also worked out of a trailer on Beulah Brown Road in 1989. The police searched the trailer in January, 1989, while Bland and Walter Petty were there, and found 8.6 grams of cocaine. In August 1989 the police found Bland in possession of 8.19 grams of cocaine. Also in August 1989, Murchison was arrested in New Jersey and was in jail there until December, 1989.

The government first tied Karen Bland to McLean in 1987. She was arrested in 1989 and went to prison for approximately nine months in 1990.

On April 2, 1990, the police searched the area around "the shop" and found six vials of crack concealed in a car that had been abandoned on the property. Vanessa Shaw, who was then working as McLean's assistant, was arrested and charged with possession of the drugs related to the search.

In 1990, McLean began using a house on South Plank Road to store and sell cocaine. According to Murchison, McLean switched his operation from "the shop" to the house on South Plank Road after Shaw's arrest.

Early in 1994, McLean purchased a yellow 1978 Ford station wagon, but titled it in the name of Thurman Blue, an unindicted co-conspirator. On April 23, 1994, McLean was driving the vehicle when Sanford police officers stopped it for not having a license plate. The police officers searched the vehicle and found crack cocaine in a brown bag sitting between the front seats. All charges against McLean stemming from this incident were subsequently dismissed.

Murchison was arrested in 1994. He pled guilty to federal drug charges. He had sold drugs independently of McLean from 1989 or early 1990 until the time of his arrest.

4

Other alleged co-conspirators presented evidence of various sales practices in the late 1980s and early 1990s in and around Sanford involving "the shop," a trailer on Beulah Brown Road, a few different houses, and a place in the woods.

McLean, Bland, James Marshall McLean, Taylor, and Berryman were all arrested on February 15, 1996. McLean was arrested at "the shop," which he had again begun to use as a distribution center sometime after Shaw's arrest. As the police officers approached him, McLean threw down a bag containing an ounce of marijuana. The arrests were the culmination of a federal investigation into the drug distribution activities of McLean and his associates.

At trial, Bland and McLean each presented character evidence. McLean presented testimony that he had a good reputation, ran a logging business, and regularly attended church. Bland's evidence showed she had worked at an animal hospital since her release from prison in 1990. She had taken custody of both of her children and spent her evenings at home with them. Murchison had testified that Bland worked in April 1994 selling drugs for McLean out of the trailer on Beulah Brown Road and out of a house on McIvor Street. Bland, however, presented testimony that there was no trailer on Beulah Brown Road during this time because it had burned down in 1990 and was not replaced until 1995. Bland also presented evidence that she had never lived on McIvor Street.

As they were entitled to do, both McLean and Bland moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 after the jury had given its guilty verdict as to each of them. The district court denied McLean's motion and refused to entertain Bland's motion because she had absented herself from the jurisdiction of the court for some period of time before the trial. Bland did not question the district court's ability to refuse to entertain her motion, and we do not address that question here.

II.

The district court entered a final order in McLean's case on October 3, 1996, and in Bland's case on September 10, 1997. Both defen-

5

dants entered timely appeals, and we have jurisdiction under 28 U.S.C. § 1291 (1994) and 18 U.S.C. § 3742.

III.

We review de novo a district court's ruling on a motion for judgment of acquittal. United States v. Romer, 148 F.3d 359, 364 (4th Cir. 1998). When a defendant's Rule 29 motion rests on a charge of insufficiency of the evidence, we review the evidence in the light most favorable to the prosecution to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

A. McLean

McLean argues that the government's evidence showed at most multiple conspiracies rather than the single 26-year conspiracy charged in the indictment, that the single conspiracy charge permitted the government to enter evidence of prior convictions that would otherwise have been inadmissible under Rule 404(b), and that the government failed to establish all essential elements of a conspiracy with regard to his conduct. These arguments are somewhat intertwined; the failure to prove the existence of a single conspiracy, as opposed to multiple smaller conspiracies, may be viewed as a failure to prove an essential element of the crime of conspiracy.

The government must establish each element of a conspiracy beyond a reasonable doubt. United States v. Burgos, 94 F.3d 849, 855 (4th Cir. 1996) (en banc), cert. denied , 117 S.Ct. 1087 (1997). The essential elements of a conspiracy are:

> (1) an agreement between two or more persons, which constitutes the act; and (2) an intent thereby to achieve a certain objective which, under the common law definition, is the doing of either an unlawful act or a lawful act by unlawful means.

Id. at 860 (internal citation omitted).

6

The government cannot use multiple conspiracies as evidence to support an indictment for a single conspiracy; the evidence at trial may not vary impermissibly from the allegations of the indictment. Kotteakos v. United States, 328 U.S. 750 (1946). A defendant may establish a fatal variance "when the evidence at trial establishes facts materially different from those alleged in the indictment." United States v. Kennedy, 32 F.3d 876, 883 (4th Cir. 1994). In United States v. Goss, the Fourth Circuit struck down a conspiracy conviction in a case in which the government had charged 10 defendants (though it identified 25 co-conspirators) with "white liquor" violations and alleged a single conspiracy involving multiple conspirators in multiple locations. 329 F.2d 180 (4th Cir. 1964). The court struck down the conviction because the evidence failed to prove any"unitary scheme" or "common aim"; rather it presented a series of undoubtedly criminal activities that had no evident relation to each other. Id. at 183-184. The court observed that the criminal activities proven at trial were "so far apart and so differently peopled as to destroy any semblence of relationship." Id. at 183.

McLean's case differs from Goss in that the alleged conspiracy involves fewer actors and is based on more numerous overt acts, but the government's allegation of a single, overarching 26-year conspiracy is subject to similar problems of proof. One of the primary deficiencies in the case against McLean is a lack of co-conspirators, particularly in the early stages of the alleged conspiracy. The "gravamen of the crime of conspiracy is an agreement to effectuate a criminal act." United States v. Laughman, 618 F.2d 1067, 1074 (4th Cir. 1980). In addition, the vast majority of the overt acts occur in 1987 and later. Evidence of pre-1987 drug activity derives mostly from McLean's prior convictions, rather than from evidence offered in the conspiracy trial itself.

Taken in the light most favorable to the United States, the evidence shows that McLean was involved in dealing drugs of various types in Lee County from at least the early 1970s to 1996, though his activities were interrupted by stretches in state prison.

The evidence shows that McLean sold marijuana and LSD from a pool hall in Sanford in the early 1970s. The government has identified no co-conspirators who were allegedly in business with McLean dur-

7

ing this time period. The government showed only that McLean gave marijuana to his cousin Murchison, who was visiting from New England, and that McLean was apparently in the company of two men, Hollingsworth and Baldwin, when he sold marijuana to an undercover officer for the Sanford Police Department. There is no evidence that Murchison conspired with McLean to sell drugs at that time, or that McLean was conspiring with anyone else. Though conspiracies may be broad-ranging in time, scope, and participants, see Burgos, 94 F.3d at 861, they do require the participation of at least two persons, id. at 860 (conspiracy is an unlawful agreement between two or more individuals either to commit an unlawful act or to perform an otherwise lawful act in an unlawful manner). The mere fact that McLean knew Murchison at the time is insufficient to establish the existence of a conspiracy. "[M]ere knowledge, acquiescence, or approval of a crime is not enough to establish that an individual is part of a conspiracy to distribute drugs." United States v. Pupo, 841 F.2d 1235, 1238 (4th Cir. 1988) (en banc).

McLean went to prison from 1973 to 1974. A defendant's involvement in a conspiracy is presumed to continue absent an affirmative act of withdrawal; arrest and imprisonment alone are not per se acts of repudiation, though they may be enough evidence of withdrawal to create a question for the jury. See, e.g., United States v. West, 877 F.2d 281, 289-90 & n.4 (4th Cir. 1989). Here, however, the government has established no evidence of any conspiracy that McLean would have been required to disavow. The 26-year conspiracy allegation fails alone because the United States's failure to show the existence of any co-conspirators also means it is unable to prove any common goal or goals between or among two or more persons during the early years of the alleged conspiracy.

The next time period, from 1975 to 1983, suffers from similar problems of proof. After his release from prison in 1974, McLean apparently started selling drugs again, though this time he added cocaine to his wares. However, evidence of conspiratorial activity during the early part of this time period is scarce. In the early 1980s, McLean occasionally employed men, including Tony Wade Johnson and Fletcher McBride, to drive to Fayetteville to pick up LSD for him. He would pay them for their work either with currency or with LSD. McLean went to prison again from 1983-85. When he got out,

he apparently did not sell any drugs until 1987; one of the government's own witnesses, Tony Wade Johnson, testified that McLean was "clean" for a few years after his release from prison. J.A. at 648.

Viewing the evidence in the light most favorable to the government, the government showed that McLean conspired with Tony Wade Johnson and Fletcher McBride to sell drugs from 1980 to 1983. These conspirators, however, do not reappear, nor is there any evidence that this conspiracy to deal drugs survived McLean's imprisonment. A conspiracy is at base an agreement to commit an unlawful act. While a conspiracy may survive when one of the conspirators is sent to prison, and while that conspirator's incarceration will not in and of itself constitute his withdrawal from the conspiracy, here there is no evidence that any agreement between McLean, Tony Wade Johnson, and Fletcher McBride continued after McLean was incarcerated.

The third major time period at issue was 1987 to 1996. The government proffers more evidence for that time period. Murchison and Bland, the primary co-conspirators named in the indictment, came on the scene in 1987, two years after McLean's 1985 release from prison. With the exception of Murchison, McLean's cousin, the other co-conspirators named in the indictment all date from the post-1986 time period. Taken in the light most favorable to the government, the evidence establishes McLean's involvement in a conspiracy to distribute crack from 1987 to 1996, the date he was arrested. The amount of evidence supporting conspiratorial activity after 1987 cannot, however, offset the paucity of evidence offered for the earlier time periods at issue.

We conclude that the evidence proffered by the government at trial varied fatally from the indictment for a 26-year conspiracy. To recapitulate, the government's evidence shows what might be termed a non-conspiratorial, though criminal, period before the early 1980s; a two-to-three-year criminal period from 1980 to 1983 involving at least two co-conspirators and culminating in a prison sentence; and a third period extending from 1987 to 1996, which period involves the bulk of the government's evidence. McLean is not an exemplary citizen and he is the common denominator in the conspiracies shown by the government, but this fact does not offset the error. "[The govern-

9

ment may not] string together, for common trial, eight or more separate and distinct crimes, conspiracies related in kind though they might be, when the only nexus among them lies in the fact that one man participated in all." Kotteakos, 328 U.S. at 773.

The indicted co-conspirators, with the exception of McLean's cousin Murchison, all date from the post-1986 time period. Tony Wade Johnson testified that he did not sell drugs for McLean after Johnson got out of prison in 1988. J.A. at 651-52. Fletcher McBride does not appear in the testimony after 1983. The government has therefore shown no overlap in the actors (with the exception of McLean) and no "unitary scheme" or "common aim" among co-conspirators for the period before 1987. See, e.g., Goss, 329 F.2d at 183 (conspiracy not established when only thing in common was law defendants were breaking).

Where the evidence proffered to support the crime of which a defendant is convicted is insufficient, we will not refrain from overturning a jury verdict. "[A] properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt . . . . In a federal trial, such an occurrence has traditionally been deemed to require reversal of the conviction." Jackson v. Virginia, 443 U.S. 307, 317 (1979). Where, as here, the lack of evidence is such that a "reasonable fact-finder" could not have found that the government established an overarching 26-year conspiracy, we must reverse the judgment of conviction and remand for entry of a judgment of acquittal.

We also recognize that a variance between the indictment and facts proved at trial may be harmless error. Kennedy , 32 F.3d at 883; Fed. R. Crim. P. 52(a). The question is therefore whether the variance violated McLean's substantial rights, and we find that it did.

The government exceeded its bounds by charging and attempting to prove a 26-year conspiracy for which its evidence was sketchy at best. We recognize that the government cannot be expected to identify precisely the beginning and ending dates of a conspiracy, which is largely a mental exercise, see United States v. Queen, 132 F.3d 991, 999 (4th Cir. 1997) ("[T]he trier of fact may find that the starting date of a conspiracy begins anytime in the time window alleged, so long

10

as the time frame alleged places the defendant sufficiently on notice of the acts with which he is charged."), cert. denied, 118 S.Ct. 1572 (1998). The Queen court found that a 13-month window within which a jury could find the commencement of a conspiracy did not prejudice the defendant's rights because Queen was sufficiently on notice of the charges against him to defend himself effectively and to prevent reprosecution for the same offense. Further, because a particular date is not a substantive element of the crime of conspiracy, "`strict chronological specificity or accuracy is not required.'" Id. (quoting United States v. Kimberlin, 18 F.3d 1156, 1159 (4th Cir. 1994) (internal citation omitted)).

This case differs fundamentally from that in Queen because of the extreme length of the time period the government sought to cover in its window. Charging McLean and his co-conspirators with a 26-year conspiracy, but offering little or no proof as to activities in the first 17 years of the time period covered, is not prosecutorial conduct that the court can support. Conspiracy charges are useful tools for prosecutors, but using the charge to reach well beyond the range of activity supported by the evidence is an abuse of the weapon. As Justice Jackson noted as early as 1949, the history of conspiracy, "that elastic, sprawling and pervasive offense," "exemplifies the tendency of a principle to expand itself to the limit of its logic." Krulewitch v. United States, 336 U.S. 440, 445 (1949) (internal quotation marks and citation omitted) (J. Jackson concurring). The government must be held to some standards of proof of the period alleged, and the defendant must have some ability to prepare his defense without being required to respond to inchoate attacks on the bulk of his life. Impairing a defendant's ability to conduct his defense violates his substantial rights. United States v. Lewis, 53 F.3d 29, 35 (4th Cir. 1995).

McLean was prejudiced in other ways by the 26-year conspiracy charge. By stretching the period of the conspiracy to cover 26 years, the government could include drugs from that entire period in the "relevant conduct" calculation under the United States Sentencing Guidelines. J.A. at 1100-07. The Guidelines give prosecutors a great deal of discretion, but the prosecutor must exercise that discretion with integrity.

Indicting McLean for a 26-year conspiracy also permitted the government to introduce evidence of McLean's prior convictions under

11

Federal Rule of Evidence 404(b). That evidence was not only prejudicial to McLean's interests, see Old Chief v. United States, 117 S.Ct. 644, 650 (1997) (warning of "risk that a jury will convict for crimes other than those charged--or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment" (internal quotation marks and citation omitted)); without it, the government offered virtually no testimony relating to the first ten years of the alleged conspiracy, and remarkably little as to the first 17 years of the conspiracy. We have previously cautioned that the "obviousness of the criminalness of the defendants' behavior cannot be allowed to obliterate the prejudice arising from the failure of the misconduct to sustain the special nature of the particular charge." Goss , 329 F.2d at 184. The Eighth Circuit has upheld a conviction predicated on a conspiracy lasting more than 20 years, but in that case the government offered copious evidence of the defendant's activities over a thirty-year period. Alexander v. Thornburgh, 943 F.2d 825, 827, 829-30 (8th Cir.), vacated on other grounds, Alexander v. United States, 509 U.S. 544 (1993).

Because no rational trier of fact could have found that the government proved the existence of a 26-year conspiracy, we reverse McLean's conviction and remand for the entry of a judgment of acquittal. Our decision to order a judgment of acquittal effectively moots McLean's other claims.

## B. Bland

Karen Bland was convicted for the same 26-year conspiracy allegedly masterminded by McLean. Because Bland's conviction was subject to the same evidentiary insufficiencies as that of McLean, we also reverse Bland's judgment of conviction and remand to the district court for the entry of a judgment of acquittal.

Our decision to grant Bland's motion for judgment of acquittal also moots Bland's other claims. We note for the district court's guidance in the event of any further proceedings that Bland was entitled to a jury instruction on withdrawal from the conspiracy, see Kornahrens v. Evatt, 66 F.3d 1350, 1354 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996), and that the record of Bland's commission of any overt acts in furtherance of the conspiracy within the last five years of its

12

alleged duration is sparse at best, <u>see</u> 18 U.S.C. § 3282 (providing that indictment in non-capital offense be brought within five years of the unlawful activity).

IV.

Because the government proffered insufficient evidence to sustain their convictions for a 26-year conspiracy, we reverse the convictions of Henry Frank McLean and Karen Elaine Bland and remand for entry of judgments of acquittal for both of them.

<u>REVERSED AND REMANDED</u>

13