902 F.2d 1566
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Orville KINCAID, Defendant-Appellant.
 No. 88-5684.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 3, 1989.
Decided May 2, 1990.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. John T. Copenhaver, Jr., District Judge. (CR-88-159)
 Charles Russell Webb, Goodwin & Goodwin, Charleston, W.V., for appellant.
 Amy Michelle Lecocq, Assistant United States Attorney, Charleston, W.V. (Argued), for appellee; Michael W. Carey, United States Attorney, Charleston, W.V., on brief.
 S.D.W.Va.
 AFFIRMED.
 Before WIDENER and PHILLIPS, Circuit Judges, and JAMES C. FOX, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Orville Kincaid appeals from his conviction under 21 U.S.C. section 846 for conspiracy to distribute cocaine. We affirm.
 
 
 2
 A federal grand jury sitting in Bluefield, West Virginia, indicted Kincaid and four others in an eighteen-count indictment. Count one of the indictment charged that Kincaid, along with Frederick Harris, Hubert Tyler, Gladys Johnson, and Mont Mitchell, conspired to distribute, and possess with intent to distribute, cocaine during the summer of 1987 and continuously thereafter until July 1988, at or near Charleston, West Virginia.[1] Count sixteen of the indictment charged that Kincaid and Frederick Harris aided and abetted each other in the possession with intent to distribute and in the distribution of approximately .19 grams of cocaine in violation of 21 U.S.C. section 841(a)(1). The other counts of the indictment charged similar offenses with respect to the other alleged coconspirators, for a total of seventeen overt acts in furtherance of the overall conspiracy. All but two of the other counts involved Harris, the alleged kingpin of the operation.
 
 
 3
 Harris, Tyler, and Johnson all entered guilty pleas prior to trial, and the government dismissed the charges against Mitchell. Upon a trial, a jury found Kincaid guilty of both the conspiracy and distribution charges. On appeal Kincaid contests only his conviction on the conspiracy count.
 
 
 4
 Kincaid's principal challenge concerns the sufficiency of the evidence used to secure his conviction for conspiring to distribute cocaine. In essence, Kincaid argues that, although he purchased cocaine from Harris several times a week, and from others on an occasional basis, he was merely a junkie fulfilling his habit and had no agreement with Harris to redistribute the drug. Our consideration of Kincaid's view of the evidence is limited to determining whether, viewed in the light most favorable to the government, substantial evidence exists to support the verdict. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Samad, 754 F.2d 1091, 1096 (4th Cir.1984) (citing Glasser ). Stated another way, Kincaid's conviction must stand if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original).
 
 
 5
 To obtain a conviction under 21 U.S.C. section 846, the government must prove beyond a reasonable doubt that a defendant agreed with another person to effectuate a criminal act. United States v. Watkins, 662 F.2d 1090, 1096 (4th Cir.1981). The government need not produce a written agreement with the defendant's signature, for example, or other direct evidence. Instead, a jury properly may infer an agreement from the facts and circumstances of the case. Watkins, 662 F.2d at 1097.
 
 
 6
 At Kincaid's trial, he did not contest the fact that he purchased cocaine from Harris several times a week for approximately one year. In addition, Kincaid does not dispute the government's proof that secured his conviction on the distribution count in the indictment, namely that he purchased cocaine from Harris for the purpose of selling it to Charles Yancy, who was in fact acting as a government informant. Yancy described the purchase in detail and, because Yancy was equipped with a body wire, the jury also heard a tape recording of the transaction.[2] Yancy testified that he waited while Kincaid went into an apartment to obtain the cocaine. Although Kincaid purchased fifty dollars worth of cocaine for Yancy, Kincaid removed approximately half that amount for himself before returning to make the exchange. Kincaid attempted to justify the small quantity by telling Yancy that the supplier was getting down to the last of his shipment, and that Yancy probably could obtain something better later on. With regard to future purchases, Kincaid told Yancy that if he would return later, Yancy probably could get some cocaine with "rock" in it, or crack. Kincaid further stated, "let me know if you're gonna do that before you go somewhere else ... don't go up there."
 
 
 7
 Gladys Johnson testified that Kincaid provided her cocaine on two occasions in the summer of 1988, and that he told her he got the cocaine from Harris.[3] Johnson also testified that she observed Kincaid "cop" cocaine for a man named Danny, that is, obtain cocaine from Harris to provide to Danny.
 
 
 8
 John Dean, who admitted that he was one of Harris' distributors, testified that he sold Kincaid cocaine on occasion and that some of the purchases were made for other people. Specifically, Dean testified that Kincaid copped cocaine for a man with braided hair by trading Dean the man's pistol for a quantity of the drug. In addition, Dean testified that Kincaid told him that he was copping for other people.
 
 
 9
 Finally, Harris, the chief supplier of the distribution ring, testified that he saw Kincaid redistribute some of the cocaine he obtained from Harris. Moreover, during the cross-examination of Harris, Kincaid attempted to elicit testimony that would limit Harris' conspiratorial relationship to only three persons whom he trusted enough to front the drugs. Such testimony would, it was obviously hoped, distinguish his own relationship with Harris because Harris dealt with Kincaid on a cash only basis. Instead of supporting Kincaid's version of the case, however, Harris testified as follows:
 
 
 10
 Q: And you had an agreement with them, didn't you? You had an agreement with them that they would go out and sell cocaine and bring you back the money, right?
 
 
 11
 A: Yes.
 
 
 12
 Q: Okay. So you had a conspiracy to distribute cocaine with those three people, didn't you, as far as you understand it?
 
 
 13
 A: Well, more than that.
 
 
 14
 Q: Yeah, okay.
 
 
 15
 A: Orville [Kincaid] was one of them.
 
 
 16
 Q: Was he one of the ones that took the cocaine out?
 
 
 17
 A: He was one of the ones that sold it. Now--
 
 
 18
 Further examination of the testimony of Harris and the other government witnesses reveals that appellant, through vigorous cross-examination, was able to raise some inconsistencies in their testimony. On appeal, however, we must conclude that the jury resolved any inconsistencies in the government's favor. We have little trouble concluding that, even if a rational jury might have acquitted Kincaid on the conspiracy count, a rational jury also could have concluded beyond a reasonable doubt that Kincaid and Harris had agreed to distribute cocaine.
 
 The judgment of conviction is accordingly
 AFFIRMED.[4]
 
 
 [1]
 The Bluefield grand jury later returned a superseding indictment that further identified Mont Mitchell as Martha Mitchell, also known as "Mott" or "Mont." The superseding indictment was the same as the original indictment in all other respects
 
 
 [2]
 The trial court neglected to inform the members of the jury, before they retired, that the tape recording would be made available for them during their deliberations if they desired. Upon realizing the oversight, the trial court called the jury back into the courtroom and informed them that if they wished to hear the tape again, provisions would be made to that effect upon their request. We reject Kincaid's claim that the trial court's actions so emphasized a piece of inculpatory evidence as to be reversible error
 
 
 [3]
 We also reject Kincaid's claim that Johnson, who was indicted as a coconspirator, was a surprise witness whose testimony should not have been admitted
 
 
 [4]
 Kincaid also contends that, because count one of the indictment charged that he conspired with four other persons while the proof at trial demonstrated at best a conspiracy between only himself and Harris, he was denied a fair trial. See United States v. Coward, 630 F.2d 229 (4th Cir.1980). Here, unlike cases in which defendants are tried together and the proof of multiple conspiracies may serve to confuse the jury, see Coward, 630 F.2d at 231, the government merely proved a single conspiracy that was smaller than that alleged. Thus, even if the proof might be considered a variance from the indictment, "[i]t is settled by the great weight of authority that although an indictment charges a conspiracy involving several persons and the proof establishes the conspiracy against some of them only, the variance is not material." Berger v. United States, 295 U.S. 78, 81 (1935)