**UNITED STATES of America, Appellee,**
v.

**Billy Thomas COWARD, Appellant.**

No. 81–5029.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 11, 1981.

Decided Jan. 12, 1982.

Rehearing and Rehearing En Banc
Denied March 2, 1982.

Certiorari Denied April 26, 1982.
See 102 S.Ct. 2014.

V. Edward Jennings, Jr., Winston-Salem, N. C., for appellant.

David B. Smith, Asst. U. S. Atty., Greensboro, N. C. (Benjamin H. White, Jr., U. S. Atty., Greensboro, N. C., Becky M. Strickland, Paralegal Specialist, on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and ERVIN and CHAPMAN, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

Appellant Billy Thomas Coward seeks reversal of his convictions for multiple violations of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801 *et seq.* Finding his assignments of error meritless, we affirm.

## I

The facts depict a physician and a pharmacist misusing their professions to facilitate the wide-ranging abuse of controlled drugs in and about Landis, North Carolina.

The physician, Dr. Gerald C. Shingleton, favored his patients with a steady and ready supply of prescriptions for stimulants and depressants. He wrote prescriptions without pretext of a professional assessment of the recipient's medical requirements. Indeed, if requested, Dr. Shingleton prescribed stimulants and depressants simultaneously.

As a physician, Dr. Shingleton could authorize controlled drugs for his patients but could not actually provide them. Provision of the drugs required the services of a pharmacist who would not be alarmed at the prospect of serving customers large quantities of either stimulants or depressants or both. The doctor found two such pharmacists: appellant Coward, the proprietor of Landis Drug Company in Landis, and one Robert Dixon Coffey, who did business in a neighboring town.

In time Dr. Shingleton established a mutually profitable relationship with each pharmacist; he prescribed, the pharmacists vended. The Shingleton-Coward venture included such features as Dr. Shingleton's giving discount coupons for Landis Drug and establishing direct telephone lines between the doctor's office and Coward's pharmacy. Shingleton also furnished Coward with presigned blank prescription pads to facilitate prescription-by-telephone service.

So noticeable a trade in controlled drugs emanating from Landis drew the attention of the State and Federal authorities. Agents went into the field to obtain controlled drugs from Dr. Shingleton without demonstrating a medically acceptable need for these drugs; they succeeded. The investigation further revealed the complicity of the pharmacists. Sensing the imminent demise of his enterprise, Dr. Shingleton hastily departed from Landis. Undaunted by Shingleton's disappearance, Coward engaged a receptionist to open the doctor's office and refer requests for prescription refills to Coward's. Shortly thereafter, the authorities closed in.

On December 4, 1978, a Federal grand jury returned a multiple-count indictment against Shingleton, Coward and Coffey. Count one charged the three men with a single conspiracy to distribute controlled substances in violation of 21 U.S.C. § 841(a)(1)[1] and 21 U.S.C. § 846.[2] The remaining counts charged separate violations of § 841(a)(1) to each defendant.

A joint trial of Coward and Coffey began February 13, 1979. At the close of the Government's case, the District Court ruled the evidence insufficient to underprop the charge of a single conspiracy among Coward, Coffey and Shingleton. The jury, however, was permitted to consider whether either Coward or Coffey was guilty of a separate two-person plot with Shingleton. Verdicts against both men were found.

Coward and Coffey appealed their convictions, arguing that they were prejudiced by the District Court permitting the jury to consider the possibility of two distinct conspiracies rather than a single three-person complot among Coward, Coffey and Shingleton. Finding prejudice evinced in the jury's confusion over which acts of conspiracy were ascribable to each defendant, this Court reversed and recommitted the case for separate trials of Coward and Coffey. *United States v. Coward*, 630 F.2d 229 (4th Cir. 1980). The decision stressed, however, that abundant testimony existed to uphold the jury's determination that each pharmacist participated in a separate conspiracy with Shingleton; the confusion generated by the trial was the sole basis for reversal.

---

1. 21 U.S.C. § 841(a)(1):
   Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . .

2. 21 U.S.C. § 846:

   Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

Retrial of Coward ensued December 8, 1980. Indictment count one was tried only in respect to Coward and Shingleton; as the District Court read this charge to the jury, all references to Coffey were omitted. The individual counts laid to Shingleton and Coffey similarly were deleted. When the jury retired to deliberate, the complete indictment, with all references to Coffey intact, was sent to the jury room pursuant to local court rule. The jury declared Coward guilty on all counts, save two of the substantive counts, and judgment was passed accordingly; this appeal followed.

## II

■■■ Coward urges that his retrial on the conspiracy count twice placed him in jeopardy for the same offense. Ordinarily, retrial of a defendant following appellate reversal of an earlier conviction does not raise the double jeopardy bar. *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). An exception to this general rule is invoked if the reversal is ordered solely because the Government's proof fails to justify the conviction. In that situation, the reversal is equivalent to declaring the District Court in error for not directing an acquittal, and the double jeopardy rule bars a retrial. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

■■■ Coward presses that this exception obtains here because the three-person conspiracy was held unproven. This insistence, however, springs from a misunderstanding of the basis for vitiating his first conviction. The Government's inability to establish a unitary three-person conspiracy did not require reversal and new trial. When the indictment avers a unitary conspiracy but the proof instead reveals a set of separate conspiracies, the variance is not necessarily fatal to the Government's case. *Berger v. United States*, 295 U.S. 78, 81–84, 55 S.Ct. 629, 630–631, 79 L.Ed. 1314 (1935). Reversal is appropriate only if the discord " 'af-

fect[s] the substantial rights' of the accused." *Id.* at 82, 55 S.Ct. at 630. Such a material variance was seen in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). There the defendants were indicted for a single conspiracy; the proof, however, described eight distinct conspiracies. The Court believed the jury's confusion resulting from the necessity of sorting the evidence according to defendant and conspiracy was too great to let the conviction stand. *Id.* at 769–71, 66 S.Ct. at 1250.

■■■ This Court's earlier reversal of Coward's conviction was based on a straightforward application of *Kotteakos*. The error was not in the proof: "[t]he government produced abundant evidence from which a jury could infer the separate conspiracies" with Shingleton. 630 F.2d at 230. As in *Kotteakos*, the source of error was jury confusion stemming from the necessity to consider two conspiracies instead of just one. As exampling this confusion, the Court cited the similarity between Coward and Coffey's names and their erroneous transposition during the prosecutor's closing remarks.[3] Consequently, the trial court's error was not its failure to direct an acquittal, but rather its failure to order separate trials for the two defendants. For this reason, the exception to the rule allowing retrial espoused in *Burks* does not pertain here.

## III

■■■ Coward next contends that the District Court impermissibly amended the indictment by omitting references to Coffey when reading it to the jury at the outset of the trial. Coward cites the general rule forbidding amendment of an indictment by the court or prosecutor. *Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). *See generally* 1 Wright & Elliott, Federal Practice & Procedure: Criminal § 127. But the Government maintains that this matter falls within the generally acknowledged ex-

---

**3.** *See id.* at 231. The finding of jury confusion was not mere speculation by the Court. The jury, following more than a day of deliberation, requested that the District Judge clarify the evidence, but this request was refused.

ception which permits the court to strike surplusage from the indictment. *See, e.g., United States v. Burnett,* 582 F.2d 436 (8th Cir. 1976); *United States v. Holt,* 529 F.2d 981 (4th Cir. 1976).

The allowance of surplusage deletion manifests the rejection of an inflexible reading of the practice in *Bain* in favor of a reading sensitive to purposes served by the indictment. The Third Circuit forcefully fixed the contours of the rule as follows:

> Properly viewed, *Bain* and its progeny forbid two general kinds of amendments to indictments. First, *Bain* prohibits any amendment that transforms an indictment from one that does not state an offense into one that does.... The second improper alteration is seen in any change that tends to increase the defendant's burden at trial.... [This second type of amendment] is proscribed because it has the effect of undermining the notice function of the indictment.

*United States v. Milestone,* 626 F.2d 264, 269 (3d Cir.), *cert. denied,* 449 U.S. 920, 101 S.Ct. 319, 66 L.Ed.2d 148 (1980).

Applying these tests to the instant case, we are convinced that the District Court excised nothing but surplusage from the indictment. We have shown that Coward could have been found guilty of a two-person conspiracy with Shingleton despite the indictment's charge of a three-person conspiracy including Coffey; jury confusion, not the form of the indictment, required a new trial. Hence, there was no "amendment that transforms an indictment that does not state an offense into one that does." Likewise, Coward can point to no prejudice to him resulting from the obliterations; the Government's case and Coward's defense remained unchanged. Thus, the District Court made "no change that tends to increase the defendant's burden at trial."

## IV

■ The third issue framed by Coward is whether the District Court erred by sending an unedited copy of the indictment to the jury room as required by local court rule.[4] Coward's counsel made no objection to this practice at trial, despite his presumed knowledge of the local rule. When the District Judge initially read the indictment to the jury, he explicitly informed them that he omitted portions "which did not relate to the defendant before this Court ...." Furthermore, the jurors were instructed repeatedly that an indictment is only a formal charge and does not constitute evidence. These admonitions effectively offset any hypothetical prejudice resulting from the jury's receipt of the unedited indictment.

## V

Coward makes several assignments of error relating to the admission into evidence of over 800 prescriptions for controlled drugs written by Shingleton and filled by Coward during the time of the alleged conspiracy. These exhibits were erroneously suppressed by the District Court prior to the initial trial of Coward and Coffey; a factual misunderstanding as to the ownership of these records induced the District Court's mistake. Although it had not appealed the earlier ruling, the Government clarified the error at the retrial and successfully moved for the admission of this evidence.

■ Coward now contends that principles of due process allowed him to rely on the District Court's earlier ruling. We know of no such due process right. Remand of the case for a new trial effectively cleansed the slate; the District Court properly corrected as many errors of the first trial as was possible.

---

4. Faced with this situation, other courts have followed the practice of submitting an edited version of the indictment to the jury. *See United States v. McCrane,* 527 F.2d 906 (3d Cir. 1975), *cert. denied,* 426 U.S. 906, 96 S.Ct. 2227, 48 L.Ed.2d 831 (1976); *United States v. Bryant,* 471 F.2d 1040 (D.C.Cir.1972), *cert. denied,* 409 U.S. 1112, 93 S.Ct. 923, 34 L.Ed.2d 693 (1973).

Coward also mounts an attack on the relevance of this evidence. It is sufficient to note that the use of such material to prove a defendant's knowledge and intent in a prosecution of this nature has been sanctioned repeatedly by the Courts of Appeals. *See, e.g., United States v. Jackson,* 576 F.2d 46, 49 (5th Cir. 1978); *United States v. Ellzey,* 527 F.2d 1306, 1307 (6th Cir. 1976).

Coward's contention that the prejudicial value of this evidence outweighs its probative value likewise lacks merit. This determination is committed to the discretion of the trying court and will not be overturned absent "grave abuse." *United States v. Tibbetts,* 565 F.2d 867 (4th Cir. 1977). No such abuse is apparent here.

## VI

Coward's final contention is that the prosecutor committed reversible error during his closing remarks by referring to him as a "pusher" and unwarrantedly associating him with common street peddlers of illegal drugs. We do not understand the term "pusher" to be so specific. Evidence adduced at trial amply convicted Coward and supported the inference of the prosecutor's remark. *See United States v. Welebir,* 498 F.2d 346 (4th Cir. 1974).

As all of Coward's arguments have proved wanting in weight of persuasion, the judgment appealed is

Affirmed.