STATE OF NORTH CAROLINA v. GEORGE McCALL RICK

No. 226PA94

(Filed 3 November 1995)

**1. Criminal Law § 59 (NCI4th)— challenge to jurisdiction— State's burden of proof**

When jurisdiction in a criminal prosecution is challenged, the State is required to prove beyond a reasonable doubt that the crime with which defendant is charged occurred in North Carolina.

**Am Jur 2d, Criminal Law §§ 343 et seq.**

**Comment Note.—Necessity of proving venue or territorial jurisdiction of criminal offense beyond reasonable doubt. 67 ALR3d 988.**

2. **Criminal Law § 59 (NCI4th)— jurisdiction—murder in this state—sufficient evidence for jury**

   The evidence in a second-degree murder prosecution amounted to a *prima facie* showing of jurisdiction sufficient to carry the case to the jury and permit the jury to infer that the murder took place in this state, although the victim's body was found in a stream in South Carolina, where it tended to show that shortly after leaving work at 11:00 p.m., the victim went to her home in Mount Holly, two doors from where defendant lived, and changed from her work clothes into a dress; a few hours later, defendant was seen in the vicinity alone driving the victim's car; a breaking and entering occurred at the victim's home; acts of violence took place in the home as reflected by broken glass, dishes on the floor and the bedroom in disarray; a cement block and a rock used by the killer to sink the victim's body in the stream some fourteen miles away were taken from the victim's yard; on the morning following the killing, defendant left on his former sister-in-law's car a Bible in which he had written that he was going to kill himself; that afternoon defendant told a friend that he had done something for which the police were going to kill him; and when defendant was arrested, he told the police that the warrant would be worthless if he could prove he "killed that woman in South Carolina."

   **Am Jur 2d, Criminal Law §§ 343 et seq.; Evidence §§ 1125 et seq.**

3. **Criminal Law § 60 (NCI4th)— challenge to jurisdiction— instructions—State's failure of proof—not guilty verdict— special verdict**

   When jurisdiction is challenged and the trial court makes a preliminary determination that sufficient evidence exists upon which the jury could conclude beyond a reasonable doubt that the murder occurred in North Carolina, the trial court must instruct the jury that unless the State has satisfied it beyond a reasonable doubt that the murder occurred in North Carolina, it should return a verdict of not guilty and a special verdict indicating a lack of jurisdiction.

   **Am Jur 2d, Criminal Law §§ 343 et seq.; Trial §§ 1077-1079.**

STATE v. RICK

[342 N.C. 91 (1995)]

4. Criminal Law § 60 (NCI4th)— challenge to jurisdiction—instructions—burden of proof—special verdict

In this murder prosecution in which defendant challenged the facts of jurisdiction, the trial court erred by failing to instruct the jury that the State bore the burden of proving jurisdiction and that if the jury was unconvinced beyond a reasonable doubt that the murder, or the essential elements of murder, occurred in North Carolina, it should return a special verdict so indicating.

Am Jur 2d, Criminal Law §§ 343 et seq.; Trial §§ 1077-1079, 1835-1841.

5. Burglary and Unlawful Breakings § 74 (NCI4th)— second-degree burglary—absence of evidence of nighttime

The evidence was insufficient to support defendant's conviction of second-degree burglary where it failed to show that defendant broke into the victim's home during the nighttime.

Am Jur 2d, Burglary §§ 22, 23, 51; Evidence §§ 1464-1469.

Sufficiency of showing that burglary was committed at night. 82 ALR2d 643.

6. Rape and Allied Offenses § 122 (NCI4th)— attempted second-degree rape—insufficiency of evidence

The evidence was insufficient to support defendant's conviction of attempted second-degree rape where the sole evidence regarding a sexual act was that defendant could not be ruled out as a partial contributor to a semen stain found on a murder victim's jeans, but there was no evidence that defendant had the intent to have vaginal intercourse with the victim by force and against her will.

Am Jur 2d, Rape §§ 88 et seq.

What constitutes penetration in prosecution for rape or statutory rape. 76 ALR3d 163.

Sufficiency of allegations or evidence of serious bodily injury to support charge of aggravated degree of rape, sodomy, or other sexual abuse. 25 ALR4th 1213.

On discretionary review pursuant to N.C.G.S. § 7A-31 of an unpublished, unanimous decision of the Court of Appeals, 114 N.C.

App. 820, 444 S.E.2d 495 (1994), vacating judgment entered upon defendant's conviction of second-degree murder and reversing judgments entered upon defendant's convictions of second-degree burglary and attempted second-degree rape by Sitton, J., at the 15 March 1993 Criminal Session of Superior Court, Gaston County. Heard in the Supreme Court 11 May 1995.

*Michael F. Easley, Attorney General, by Valerie B. Spalding, Assistant Attorney General, for the State-appellant.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for defendant-appellee.*

LAKE, Justice.

Defendant was indicted on 14 September 1992 for the first-degree murder and second-degree rape of Erma Carol Rose and second-degree burglary. Before trial, the State reduced the first-degree murder charge to second-degree murder, and after the State rested its case, the trial court granted defendant's motion to dismiss the charge of second-degree rape but denied defendant's motion to dismiss the lesser-included offense of attempted second-degree rape. The jury returned verdicts of guilty of second-degree murder, second-degree burglary and attempted second-degree rape. The trial court sentenced defendant to life imprisonment for the murder, forty years for the burglary and ten years for the attempted rape, all sentences to run consecutively.

Defendant appealed to the Court of Appeals, which, in a unanimous, unpublished opinion, vacated defendant's conviction for second-degree murder for lack of jurisdiction on the basis of insufficient evidence that the murder occurred in North Carolina and reversed defendant's convictions of second-degree burglary and attempted second-degree rape on the basis of insufficient evidence of either crime. This Court allowed the State's petition for writ of supersedeas and petition for discretionary review on 28 July 1994. For the reasons discussed herein, we affirm in part, reverse in part and remand for a new trial as to the charge of second-degree murder.

On 27 April 1992, an unidentified female body was found floating in Mill Creek located in York County, South Carolina, approximately two miles from the North Carolina border. The body was clothed in a tan or white dress, underpants and one white, high-heeled shoe. A

cement block and a rock, with a total weight of thirty-nine pounds, were tied to the body with a pair of red pantyhose. The York County Coroner's Office recovered the body and transported it to Rock Hill, South Carolina, and from there to Charleston to the Medical University of South Carolina. An autopsy on the remains of "Jane Doe" was performed at the Medical University by Sandra Conradi, a forensic pathologist. During the visual examination, Dr. Conradi noted that the body was moderately decomposed and covered with mud. There was no evidence of trauma, but Dr. Conradi testified that as a result of the decomposition of the body, any signs of trauma evidenced through discoloration of the skin could have been missed during examination because decomposition itself causes discoloration of the skin. From the autopsy, no cause of death was determined, but in Dr. Conradi's opinion, it was not the result of natural causes, especially in light of the cement block and rock tied around the waist of the body. Homicide was believed to be the manner of death. Based upon the appearance of the body, Dr. Conradi concluded that it had been submerged in water for several days. Dr. Conradi explained that in a decomposed body, it is often difficult to determine if the cause of death was drowning; thus, she could not rule out drowning as the cause of death in this case. Neither could she rule out strangulation as a cause of death since strangulation can result in little to no injury to the neck. On 28 April 1992, "Jane Doe" was identified, through the use of dental records, as Erma Carol Rose.

The victim's sister, Wanda White, last saw the victim on Easter Sunday when the two had Easter dinner together at White's home in Vale, North Carolina. The victim's second-shift supervisor testified the last day the victim reported to the textile mill where she was employed as a supply person was on 20 April 1992. She worked from 3:00 p.m. until 11:00 p.m. On 26 April 1992, the victim's mother, Etta Hicks, became worried about her daughter because she was not returning her telephone calls. She and another of the victim's sisters drove to the victim's yellow-framed, two-bedroom house in Mount Holly, North Carolina. The victim's house is located approximately fourteen miles from the Mill Creek Bridge, where her body was found. Mrs. Hicks noticed the victim's car, a blue Mustang, was gone. As she approached the backdoor, she saw the screen was cut, and the glass in the door was broken. Alarmed, Mrs. Hicks yelled for her other daughter, and the two entered the house looking for the victim. They saw glass all over the floor in the kitchen. There were dishes thrown on the floor as though someone had eaten food and thrown the dishes

down. The kitchen faucet was dripping slowly, and the sink was nearly overflowing. In the victim's bedroom, clothes were pulled out of the drawers, and her shoes and socks were scattered throughout the room. Mrs. Hicks stated that her daughter, the victim, was a very neat housekeeper and a very clean person. They called the police to report what they had seen, and Mrs. Hicks filed a missing person's report.

Investigators conducted a walk-through of the house and noted that the ends of the screen door where it had been cut were clean and shiny. The bedcovers on the victim's bed were missing. There was an electric clock propped up on a chair in the living room, and behind a pillow on the couch was a partially empty Mountain Dew bottle. A crushed styrofoam cup was discovered in a hallway. The house was processed for latent fingerprints, and fabric impressions were found on the backdoor and the styrofoam cup. Police photographs depicted an air conditioning unit at the back of the house and a portion of the cement block on which it rested. Along the house's foundation line, an area of dirt containing a fresh impression of an object, such as a cement block, was photographed. Another impression in the ground of an object, like a rock, was photographed along the fence in the victim's yard.

Joyce Rick, the defendant's ex-sister-in-law, was at her trailer, alone, on the morning of 21 April 1992, when a blue Mustang pulled up in her driveway.[1] The Mustang was muddy. The defendant got out of the car and came to her front door. He repeatedly knocked on her door, saying, "I know you're in there," and that he needed to talk with her because she was the only friend he had. Joyce Rick did not answer the door, but she watched defendant from the other side of the door. As defendant walked back to the car, he placed something on the hood of Joyce Rick's car and drove away through the only entrance and exit to the trailer park, in the blue Mustang. Joyce went

_____

1. We note that during the pretrial hearing, Joyce Rick consistently testified that defendant came to her trailer the morning of 21 April 1992. This date was also corroborated through the testimony of the highway patrolman who was called to the scene of the wrecked Mustang on 21 April 1992. The trooper stated that Joyce Rick related to him that defendant had been at her trailer in that car a few hours earlier. However, during trial, Joyce Rick's testimony suggested she saw defendant driving a blue Mustang on 20 April 1992. It appears that this discrepancy resulted from an inadvertent mistake made by the State in asking Rick if she had seen the defendant at her trailer on the morning of 20 April, rather than 21 April. This is further borne out by the fact that when Joyce Rick was recalled as a witness, she testified she received a letter from defendant after he came to her trailer on 21 April.

STATE v. RICK

[342 N.C. 91 (1995)]

outside to retrieve the item and found it was a small Bible. Inside, the defendant had inscribed, "I'm going to kill myself tonight." Some thirty minutes later, defendant came back to Joyce Rick's trailer and knocked on the door again. He was not in a car this time. She did not answer the door, and defendant left, on foot.

Later that day, around 3:00 p.m., as Joyce Rick left the trailer park, she saw a blue Mustang parked on the side of the road. A highway patrolman was directing traffic around the Mustang. Joyce Rick informed the trooper that the car had been driven by the defendant to her trailer a few hours earlier that day. The car was later identified by investigators as belonging to the victim. The inside of the car was muddy, and glass and a pair of white pantyhose were discovered inside the car.

The victim had been dating John Springs since she separated from her husband, Benny Rose. Springs last saw the victim on 15 April 1992. Springs participated in the investigation by giving blood samples for analysis purposes. The victim had expressed to Springs her fears of her husband, Benny Rose, and a man he worked with, a Johnny Oates or Cates, and had put up blinds in her kitchen window as a result of her fears. The victim also expressed that "she was afraid of the rapist up the street that kept walking past her house and watching her." Defendant lived with his father, two houses away from the victim. The "rapist" had walked past the victim's house and watched her on 18 April 1992, just before her disappearance.

Special Agent Brenda Bissette tested several items taken from the victim's house for the presence of blood and semen. No blood was found on any of the items, but semen was found on a pair of the victim's jeans. A DNA analysis was performed on the jeans and compared with known blood samples from John Springs and defendant. The analysis revealed that the stain on the jeans consisted of a combined DNA from more than one individual. The stain could not have come from John Springs. One of the types detected, however, was consistent with having been partially contributed by defendant. Thus, defendant could not be excluded as a contributor to the stain.

Donna Branch knew both Joyce Rick and the defendant. Branch had noticed a blue Mustang on the road in front of Joyce Rick's trailer park. The next day, defendant came to Branch's house, on foot, looking for Joyce. He asked Branch to please get in touch with Joyce for him. He left Branch's house, and a short while later, on her way to pick up her son from school, Branch saw defendant walking on the

road carrying his shoes. Branch picked defendant up and drove him to Mount Holly. Defendant began to cry in the car and told Branch he had to get out of town because he "did something and somebody's going to kill me." Branch asked what he had done, and defendant replied, "The police are going to kill me." He refused to elaborate further. When defendant was arrested, he remarked, "Say, if I can prove I killed that woman in South Carolina then that warrant you['ve] got in your hand ain't worth a s——."

Defendant presented no evidence.

The State first argues that the Court of Appeals erred in holding that the State of North Carolina was without jurisdiction to try defendant for the second-degree murder of Erma Carol Rose. We agree.

Defendant filed a pretrial motion to dismiss the murder charge against him for lack of jurisdiction on the basis there was insufficient evidence from which a jury could find that the death of Erma Carol Rose occurred in North Carolina or that any crime was committed in North Carolina that caused the death of Erma Carol Rose. A hearing was held; Judge Donald Stephens presided. After the hearing, during which defendant elected to present no evidence, Judge Stephens concluded that the evidence presented was sufficient to establish that North Carolina had jurisdiction to proceed to trial on the charge of murder against defendant. Accordingly, Judge Stephens denied defendant's motion to dismiss for lack of jurisdiction.

After his conviction at trial, defendant appealed to the Court of Appeals, arguing that the trial court erred by denying defendant's motion to dismiss for lack of jurisdiction. The Court of Appeals agreed with defendant and vacated defendant's second-degree murder conviction. In so doing, the Court of Appeals reasoned that although evidence tended to show that defendant was seen driving a blue Mustang and that the victim drove a similar car, because there was no evidence indicating how, when or where the defendant committed the alleged second-degree murder, the evidence was insufficient to permit a jury to find beyond a reasonable doubt that the murder occurred in North Carolina. We do not concur with the Court of Appeals in this regard.

[1] "Second-degree murder is defined as the unlawful killing of a human being with malice but without premeditation and deliberation." *State v. Phipps*, 331 N.C. 427, 457-58, 418 S.E.2d 178, 194 (1992).

This Court has had few occasions in which to address the issue of jurisdiction as it arises in the present situation. However, some general rules are clear. "Under the law of determining jurisdiction as between states, jurisdiction lies in this state if any of the essential acts forming the crime take place in this state." *State v. Vines,* 317 N.C. 242, 250-51, 345 S.E.2d 169, 174 (1986); *see* N.C.G.S. § 15A-134 (1988). Historically, North Carolina was among a minority of states regarding a challenge to jurisdiction as an affirmative defense with the burden of persuasion resting upon the defendant. *See State v. Golden,* 203 N.C. 440, 166 S.E. 311 (1932). In *State v. Batdorf,* 293 N.C. 486, 238 S.E.2d 497 (1977), however, this Court rejected that precedent and adopted instead the majority rule requiring the State, when jurisdiction is challenged, to prove beyond a reasonable doubt that the crime with which defendant is charged occurred in North Carolina. *Id.* at 494, 238 S.E.2d at 502-03; *see State v. Petersilie,* 334 N.C. 169, 432 S.E.2d 832 (1993).

In addressing this issue, we note that the evidence in this case is circumstantial. However, this factor alone does not mean that the evidence is deficient in any respect. "[C]ircumstantial evidence is that which is indirectly applied by means of circumstances from which the existence of the principal fact may be reasonably deduced or inferred." 1 Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 80 (4th ed. 1993). We believe the circumstantial evidence presented in this case, together with the reasonable inferences which could be properly drawn therefrom, is sufficient for the jury's consideration and determination.

[2] Our review of the record reveals substantial evidence tending to show that defendant killed the victim and that he did so in North Carolina. The evidence tends to show that defendant lived two doors away from the victim. Shortly before her disappearance, the victim expressed fears of the "rapist up the street" who kept watching her. While the victim was also afraid of her estranged husband, he was eliminated by police as a suspect, as was her boyfriend. On 20 April 1992, the victim last worked at her place of employment on the second-shift and was last seen leaving work at approximately 11:00 p.m. The next morning, 21 April 1992, defendant went to Joyce Rick's trailer. He was driving a blue Mustang. After unsuccessfully begging her to let him inside so they might talk, defendant put a small Bible on Joyce Rick's car with the words, "I'm going to kill myself tonight," inscribed inside. He drove away from the trailer park in the blue Mustang, only to return, on foot, a short while later. That afternoon,

Joyce Rick drove out of the trailer park and close to the entrance saw a blue Mustang, just like the one defendant had been driving, parked on the side of the road. Joyce Rick informed the highway patrolman directing traffic around the car that defendant had driven the car to her trailer earlier that day. The car was later identified as the victim's.

From the totality of the evidence, we conclude that a jury could reasonably infer and find as fact: that the victim was killed shortly after leaving work in the morning hours of 21 April 1992; that she was killed in her home in Mount Holly, two doors from where defendant lived; and that defendant was the perpetrator. The evidence tends to show that after the victim was last seen alive, leaving work at 11:00 p.m. on 20 April 1992, she went to her home and there changed from her work clothes into social attire, including a dress and white, high-heeled shoes. A few hours later, defendant was seen in the vicinity driving the victim's car, alone. The evidence further tends to show that there was a breaking and entering at the victim's home; that acts of violence took place there, reflected by the broken glass, dishes on the floor and the bedroom in disarray; and that the cement block and rock used by the killer to sink the victim's body in Mill Creek some fourteen miles away were taken from the victim's yard. A reasonable inference from this evidence is that the victim was dead when the cement block and rock were taken from her yard and placed in her car with her body for use in its disposal. Some of the strongest evidence of defendant's guilt, aside from his proximal possession of the victim's car, comes from his own hand and mouth. He indicates some pangs of conscience with the words written inside the Bible and the comment that he had to get out of town because he had done something for which the police would kill him. His quip to police about proving he killed the victim in South Carolina to defeat the warrant for his arrest infers the motivation for attempting to hide the body two miles over the North Carolina border. We thus conclude that the evidence as a whole amounts to a *prima facie* showing of jurisdiction sufficient to carry the case to the jury and to permit the jury to infer that the murder took place in this state. Accordingly, we reverse the Court of Appeals' decision to vacate defendant's second-degree murder conviction for lack of jurisdiction.

[3] However, as the defendant points out, in *State v. Batdorf*, 293 N.C. 486, 238 S.E.2d 497, this Court held that when jurisdiction is challenged, as it is here, and the trial court makes a preliminary determination that sufficient evidence exists upon which a jury could conclude beyond a reasonable doubt that the murder occurred in North

Carolina, the trial court must also instruct the jury that unless the State has satisfied it beyond a reasonable doubt that the murder occurred in North Carolina, a verdict of not guilty should be returned. *See Batdorf*, 293 N.C. at 494, 238 S.E.2d at 503; *see also State v. Darroch*, 305 N.C. 196, 287 S.E.2d 856 (when the *locus* of the principal offense is not challenged, no instruction on the burden of proof with regard to jurisdiction is required), *cert. denied*, 457 U.S. 1138, 73 L. Ed. 2d 1356 (1982). Further, the trial court should also instruct the jury that if it is not so satisfied, it must return a special verdict indicating a lack of jurisdiction. *See Batdorf*, 293 N.C. at 494, 238 S.E.2d at 503.

[4] In the present case, the record reveals that although the defendant challenged the facts of jurisdiction, the trial court did not instruct the jury as to which party bore the burden of proving jurisdiction and that if the jury was unconvinced beyond a reasonable doubt that the murder, or the essential elements of murder, occurred in North Carolina, it should return a special verdict so indicating. We thus find it necessary upon this basis to remand this case for a new trial on the charge of second-degree murder.

[5] The State additionally argues that the Court of Appeals erred in holding that the trial court incorrectly denied defendant's motion to dismiss the second-degree burglary charge against him. We disagree.

"The constituent elements of second-degree burglary are: (1) the breaking (2) and entering (3) in the nighttime (4) into a dwelling house or sleeping apartment (5) of another (6) with the intent to commit a felony therein." *State v. Barts*, 316 N.C. 666, 689, 343 S.E.2d 828, 843 (1986).

We have set forth the law governing motions to dismiss on the basis of insufficient evidence many times. In such instances, the question for the trial court to determine is whether there is substantial evidence of each element of the crime charged. *State v. Bates*, 309 N.C. 528, 308 S.E.2d 258 (1983). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *State v. Vause*, 328 N.C. 231, 400 S.E.2d 57 (1991). "If there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988). Further, the evidence must be viewed in the light most favorable to the State, and the State is to receive every rea-

sonable inference to be drawn from the evidence. *State v. Powell*, 299 N.C. 95, 261 S.E.2d 114 (1980). Contradictions or discrepancies in the evidence are properly left for the jury to resolve and do not warrant dismissal. *Id.* at 99, 261 S.E.2d at 117.

The Court of Appeals noted that no evidence demonstrated the break-in occurred in the nighttime and held that the trial court erred by denying defendant's motion to dismiss. We concur.

"The law considers it to be nighttime when it is so dark that a person's face cannot be identified except by artificial light or moonlight." *State v. Lyszaj*, 314 N.C. 256, 266, 333 S.E.2d 288, 295 (1985). Our review of the evidence tends to show that the last day the victim was seen alive was 20 April 1992 when she worked on the second-shift, from 3:00 p.m. until 11:00 p.m. On 26 April 1992, the victim's mother discovered the backdoor screen had been cut, and the backdoor window had been broken. This is evidence that a break-in occurred at the victim's house. However, even drawing all inferences in favor of the State, no evidence showed defendant broke into the victim's home during the nighttime. In light of the fact that no substantial evidence exists as to the essential element that defendant perfected his breaking and entering during the nighttime, we are constrained to affirm the Court of Appeals' decision to reverse the defendant's conviction for second-degree burglary. This assignment of error is overruled.

[6] The State also argues the Court of Appeals erred in reversing defendant's conviction of attempted second-degree rape on the basis of insufficient evidence. In this instance, we disagree.

A defendant is guilty of rape in the second degree if he engages in vaginal intercourse with another person by force and against the will of the other person. N.C.G.S. § 14-27.3(a)(1) (1993). In order to prove an attempt to commit an offense, the State must show defendant intended to commit the offense and made an overt act, going beyond mere preparation, for that purpose, but falling short of the completed offense. *State v. Collins*, 334 N.C. 54, 431 S.E.2d 188 (1993). Thus, to be guilty of attempted second-degree rape, defendant must have intended to have vaginal intercourse with the victim, by force and against her will, and defendant must have taken an overt step, amounting to more than mere preparation, for this purpose, but fallen short of the completed offense.

Drawing all inferences in favor of the State, we agree with the Court of Appeals that there is no evidence, circumstantial or direct,

that defendant intended to rape the victim. There is nothing from the physical evidence gathered in this case which suggests defendant attempted to rape the victim. The sole evidence regarding a sexual act is that defendant could not be ruled out as a partial contributor to the semen stain on the victim's jeans. This evidence, standing alone as it does here, is not enough, even drawing all inferences in favor of the State, to show defendant had the intent to have vaginal intercourse with the victim by force and against her will. Thus, based upon the lack of evidence tending to show defendant attempted to rape the victim, we agree with the Court of Appeals that it was error for the trial court to submit the charge of attempted second-degree rape to the jury, and we affirm the Court of Appeals in this regard. This assignment of error is overruled.

For the foregoing reasons, the decision of the Court of Appeals is affirmed with respect to the second-degree burglary conviction and is affirmed with respect to the attempted second-degree rape conviction. The decision of the Court of Appeals is reversed with respect to jurisdiction, and the case is remanded to that court for further remand to the Superior Court, Gaston County, for a new trial on the charge of second-degree murder.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.