STATE v. RICK

[126 N.C. App. 612 (1997)]

## VI.

<hr>

STATE OF NORTH CAROLINA v. GEORGE McCALL RICK

No. COA96-876

(Filed 1 July 1997)

## 1. Homicide §§ 124, 284 (NCI4th)— second-degree murder— murder within N.C.—sufficiency of evidence

The trial court did not err in a prosecution in which defendant was convicted of second-degree murder by denying his motion to dismiss where defendant contended that the evidence was insufficient to show that he committed second-degree murder and for the jury to infer that the victim was murdered in

North Carolina where the body was recovered in a river approximately two miles from the North Carolina state line. The victim was last seen alive at 11:00 p.m. while leaving work on 20 April 1992; she went to her home and changed into a dress and white, high-heeled shoes; defendant was seen a few hours later driving alone in the victim's car; violence had taken place in the victim's home; indentations of the same dimension as the cement block and rock used to sink the victim's body in the creek were found in the victim's backyard; defendant indicated inside a Bible that he intended to kill himself because he had done something bad; defendant could not be excluded as the donor of the semen found on the victim's jeans; defendant quipped to the police that North Carolina did not have jurisdiction over a crime committed in South Carolina; defendant lived two doors from the victim; and the victim had expressed fear of "the rapist up the street" who had been watching her.

Am Jur 2d, Homicide §§ 197, 425 et seq.

2. **Homicide § 361 (NCI4th)— second-degree murder—no instruction on manslaughter—no error**

The trial court did not err by not instructing the jury on manslaughter in a prosecution which resulted in a second-degree murder conviction where the State made a showing of implicit malice and there was no evidence of heat of passion on sudden provocation or self-defense. The evidence could reasonably show that defendant committed the crime charged and no evidence of the lesser included offense was presented.

Am Jur 2d, Trial §§ 1077 et seq.

3. **Evidence and Witnesses § 2047 (NCI4th)— second-degree murder—testimony of crime scene technician—impressions in dirt at victim's house—similar to items tied to body—admissible**

There was no error in a prosecution which resulted in a second-degree murder conviction in the admission of the testimony of a crime scene technician that impressions in the dirt around the victim's house were similar in size and shape to the cinder block and rock tied to the victim's body when it was recovered from a river. The testimony was rationally based on the witness's personal perception and was helpful to the jury for a clear understanding of the facts in issue. N.C.G.S. § 8C-1, Rule 701.

**Am Jur 2d, Expert and Opinion Evidence §§ 26 et seq., 53, 54.**

**4. Constitutional Law § 231 (NCI4th)— second-degree murder—new trial following remand—not prior jeopardy**

The trial court did not err in a prosecution which resulted in a second-degree murder conviction by denying defendant's motion to dismiss based on prior jeopardy because the case had been remanded for a new trial. A reversal for error committed by the court does not bar retrial.

**Am Jur 2d, Criminal Law §§ 309 et seq.**

Appeal by defendant from judgments entered 18 March 1996 in his retrial by Judge Ronald K. Payne in Gaston County Superior Court. Heard in the Court of Appeals 1 April 1997.

*Attorney General Michael F. Easley, by Assistant Attorney General Valerie B. Spalding, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Defendant George McCall Rick was indicted for first degree murder, second degree burglary, and second degree rape on 14 September 1992. At the 15 March 1993 criminal session of Gaston County Superior Court, the jury found defendant guilty of second degree murder, second degree burglary, and attempted second degree rape. Defendant appealed to this Court, which, in an unpublished opinion filed 17 May 1994, reversed the burglary and attempted rape convictions and vacated the second degree murder conviction on the basis of insufficient proof that any crime had been committed in North Carolina. *State v. Rick*, 114 N.C. App. 820, 444 S.E.2d 495 (1994). The North Carolina Supreme Court affirmed this Court with regard to its reversal of the second degree burglary and attempted second degree rape convictions. However, the Supreme Court reversed this Court with respect to the second degree murder conviction and remanded the case to Gaston County Superior Court for a new trial on that charge. *State v. Rick*, 342 N.C. 91, 463 S.E.2d 182 (1995).

Upon retrial, the following facts were presented. On 25 April 1992, John Latham was fishing at the Mill Creek Bridge in South

Carolina, when he saw a body floating in the river. Mill Creek Bridge is approximately two (2) miles from the North Carolina state line. Rescuers recovered the body using a special metal basket. The body had been tied to a rock and a cinder block with a red ligature. The officials theorized that the body had been dumped over the side of the bridge and had traveled about twenty (20) feet. The body was transported to the morgue where additional photographs were taken. One of the photographs showed that the victim's right ear lobe contained an earring which was later used for identification purposes. The victim was Erma Carol Rose.

Gay Bean, the sister of the victim, testified that after church on 26 April 1992, she and her mother, Etta Hicks, went to the victim's house to check on her. Bean and Hicks noticed that the victim's mail was still in the mailbox, which was unusual. Further, they noted that the victim's car was not there. They then discovered that the back door screen had been cut and the glass had been broken out of the door. They went into the kitchen and saw broken glass. A styrofoam cup, a paper plate and a spoon were on the floor. One of the kitchen sinks was nearly overflowing from dripping water. This was also unusual, since the victim was a very neat housekeeper. In the bedroom, the linen had been removed from the bed, and clothes were scattered over the dresser. In the living room, a drink bottle was propped behind a cushion on the couch. Bean called the police and, the next day, filed a missing person report. At trial, Bean testified that the victim's car was a dark blue Mustang with a light blue pinstripe and that she had noticed a shotgun missing from the victim's bedroom.

Joyce Rick, defendant's sister-in-law, testified at trial that on 21 April 1992, she lived in a trailer park in Gastonia, North Carolina. Late that morning, Rick heard a car and saw defendant drive up to her trailer in a blue Mustang. Defendant then began knocking on the front door of Rick's trailer, demanding to be let in so that he could talk to her. Rick did not answer since she did not want defendant to know that she was there alone. Eventually, defendant turned and went back to the blue Mustang. On the way, he laid something on the hood of Rick's car, which she later discovered to be a small Bible. In it, defendant had written that he would forever love Rick and that he intended to end his life that night because he had done something bad. Rick did not see anyone else in the Mustang.

About thirty (30) minutes later, defendant again knocked on Rick's front door. This time, he did not have the Mustang. Instead,

defendant was on foot. He appeared upset and was carrying a beer bottle wrapped in a washcloth. He demanded to talk to Rick, but when she did not answer the door, he left after about five (5) minutes.

As Rick drove out of the mobile home park later that day, she saw the Mustang in a ditch on the main road, and a Highway Patrol officer was stopping traffic to ask about the vehicle. Rick told the officer that she did not know who owned the vehicle but that defendant had been driving it earlier. She stated that she noticed the Mustang was muddy. At trial, she identified the victim's Mustang as the car that defendant had been driving. She also testified that at one time, she had a relationship with defendant and that after it ended, he wrote and telephoned her several times.

Officer B.F. Harris of the Gaston County Police Department, who investigated the victim's home, first treated the crime as a breaking and entering and later treated it as a homicide. He processed the house for latent prints, but although several lifts were made, none were of value. At trial, he identified the items that he had found in the victim's house, as well as photographs of the outside of the house. These photographs depicted an impression in the ground on the left side of the house near the foundation and another impression in the yard near the fence in front of the house.

When defendant was arrested by the Gastonia Police on 30 April 1992, he was advised of his rights and, at first, elected to waive them but later invoked his right to an attorney. Detective S.R. Small of the Mount Holly Police Department testified that defendant stated, "If I can prove that I killed that woman in South Carolina, then that warrant you have in your hand is not worth a shit."

Officer Robert Johnston of the Gaston County Police Department testified that he had worked the crime scene at the victim's house and that while photographing the outside, he noticed two places in the ground from which it appeared that something had been removed. One place was located along the foundation line, and the other was located along the front fence. The cinder block which was found tied to the victim appeared to be similar in size and shape to the impression near the foundation of the house, and the rock which was tied to the victim appeared to be similar in size and shape to the impression at the fence.

Terry Anthony, a roofer, testified that he knew defendant. On the day the victim was reported missing, Anthony was working on the

street where the victim lived. He testified that approximately forty-five (45) minutes after he saw the police cars at the victim's house, he saw defendant walk behind the house where Anthony was working and continue into the woods carrying a black trash bag over his shoulder. Anthony spoke to defendant, and defendant waved but did not stop to speak.

Special Agent Brenda Bissette performed DNA tests on several items taken from the victim's home. Michael DeGuglielmo, a DNA expert, testified that while the results of the testing were not conclusive, defendant could not be excluded as a donor of the semen found on a pair of the victim's jeans. The victim's husband, however, was eliminated as the semen donor.

Defendant presented no evidence at trial. The jury found that North Carolina had jurisdiction and, further, found defendant guilty of second degree murder. The trial court found as an aggravating factor that defendant had previously been convicted of crimes punishable by more than sixty (60) days confinement and imposed a life sentence. Defendant appeals.

**[1]** Defendant argues that the trial court erred in denying his motion to dismiss. We disagree.

Defendant contends that the evidence was insufficient to show that he committed second degree murder and that there was insufficient evidence at the second trial from which the jury could reasonably infer that the victim was murdered in North Carolina. Our Supreme Court noted previously that while the evidence in the instant action is circumstantial, "this factor alone does not mean that the evidence is deficient in any respect." *State v. Rick*, 342 N.C. 91, 99, 463 S.E.2d 182, 186 (1995). " '[C]ircumstantial evidence is that which is indirectly applied by means of circumstances from which the existence of the principal fact may be reasonably deduced or inferred.' " *Id.* (quoting 1 Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 80 (4th ed. 1993)).

A review of the evidence reveals that the victim was last seen alive at 11:00 p.m. while leaving work on 20 April 1992; that she went to her home and changed into a dress and white, high-heeled shoes; that a few hours later, defendant was seen driving alone in the victim's car; that violence had taken place in the victim's home, as denoted by the broken glass, the dishes on the floor and the disarray of the bedroom; that indentations of the same dimensions as the

cement block and rock used to sink the victim's body in the creek were found in the victim's backyard; that defendant indicated inside a Bible that he intended to kill himself because he had done something bad; that defendant could not be excluded as the donor of the semen found on the victim's jeans; and finally, that defendant quipped to the police that North Carolina did not have jurisdiction over a crime committed in South Carolina. In addition, the evidence indicates that defendant lived two doors away from the victim and that shortly before the victim's disappearance, she expressed fear of the "rapist up the street" who had been watching her. From these facts, a jury could reasonably infer that defendant had committed the crime and that the crime occurred in North Carolina. Because there was sufficient evidence from which the jury could find that North Carolina had jurisdiction and that defendant committed the murder, the trial court did not err in denying defendant's motion to dismiss.

[2] Defendant's second argument is that the trial court erred in failing to instruct the jury on manslaughter. We find this argument to be unpersuasive.

A second-degree murder conviction requires the presence of malice, whether express or implied. *State v. Foust*, 258 N.C. 453, 128 S.E.2d 889 (1963). Malice, however, is not required for manslaughter. *State v. Mapp*, 45 N.C. App. 574, 264 S.E.2d 348 (1980). In this action, the State made a showing of implicit malice, and no evidence of heat of passion on sudden provocation or self-defense was shown. *See State v. Patterson*, 297 N.C. 247, 254 S.E.2d 604 (1979). " 'In order for an accused to reduce the crime of second-degree murder to voluntary manslaughter he must rely on evidence presented by the State or assume a burden to go forward with or produce some evidence of all elements of heat of passion on sudden provocation.' " *State v. Adams*, 85 N.C. App. 200, 207, 354 S.E.2d 338, 343 (1987) (quoting *State v. Robbins*, 309 N.C. 771, 777-78, 309 S.E.2d 188, 192 (1983)). As the evidence could reasonably show that defendant committed the crime charged and no evidence of a lesser included offense was presented, the trial court did not err in declining to charge on the lesser included offense. *Id.; see also State v. Brown*, 300 N.C. 731, 268 S.E.2d 201 (1980). Therefore, this argument fails.

[3] Defendant next argues that the trial court erred in overruling his objection to the testimony of Robert Johnston, the crime scene technician. Over defendant's objections, the trial court allowed Mr.

Johnston to testify that the impressions in the dirt around the victim's house were "similar in size and shape" to the cinder block and rock tied to the victim's body. The North Carolina Rules of Evidence provide that non-expert witness testimony "in the form of opinions . . . is limited to those opinions . . . which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C.R. Evid. 701. In this situation, Mr. Johnston's opinion was rationally based on his personal perception and was helpful to the jury for a clear understanding of the facts in issue. Accordingly, this argument is also unpersuasive.

**[4]** Defendant's final argument is that the trial court erred in denying his motion to dismiss on the ground of prior jeopardy. In *State v. Rick,* our Supreme Court remanded the case for a new trial on the charge of second-degree murder, because the trial court erred in instructing the jury, not because the State failed to properly present its case. 342 N.C. 91, 463 S.E.2d 182. Therefore, defendant's constitutional right to be free from double jeopardy was not violated, because a reversal for error committed by the court does not bar retrial. *See United States v. Coward,* 669 F.2d 180 (4th Cir.), *cert. denied,* 456 U.S. 946, 72 L. Ed. 2d 470, *reh'g denied,* 458 U.S. 116, 73 L. Ed. 2d 1378 (1982).

For all of the foregoing reasons, we find that defendant received a fair trial, free from prejudicial error.

No error

Judges GREENE and WYNN concur.