An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1462

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

STATE OF NORTH CAROLINA

v.

JUSTIN DUPREE SCALES

Guilford County
No. 12 CRS 67263

Appeal by Defendant from Judgment entered 13 May 2013 by Judge Ronald E. Spivey in Guilford County Superior Court. Heard in the Court of Appeals 23 June 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Sandra Wallace-Smith, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate Defender Kathleen M. Joyce, for Defendant.*

STEPHENS, Judge.

*Procedural History and Evidence*

This case arises from the murder of Ashley Leshay Murphy, a professional escort. Murphy's body was discovered on 27 January 2012, and Defendant was indicted for her murder on 21 May 2012. The matter came on for trial beginning 6 May 2013 in Guilford

County Superior Court. The evidence at trial tended to show the following:

Defendant telephoned an escort service on the night of 22 January 2012 and arranged for an escort to come to an apartment on Lolly Lane in Greensboro, North Carolina. Defendant shared the apartment with his grandmother. The owner of the escort service, Richard Webb, dispatched Murphy to the apartment, and she arrived at approximately 1:34 a.m. At 1:41 a.m., Webb received a text message from Murphy saying "that [Defendant] didn't have the money." Two minutes later, at 1:43 a.m., Webb telephoned Murphy, and she reported that Defendant was "walking room to room, like he can't find any money." Webb told Murphy to "[g]et out of there." At 1:45 a.m., Defendant called Webb and asked if Webb "could have [Murphy] call . . . back" because she had stolen his Xbox video game console.

In fact, Defendant had bludgeoned Murphy to death in his apartment with a metal table leg, continuing to beat her after she had lost consciousness. He then placed her body in the trunk of her red Chevrolet Cavalier with a bar of Dove soap and parked the car in a public housing complex. Defendant threw Murphy's cell phone into the backyard of a neighbor, who found it and turned it over to police on 26 January 2012. Police found

Murphy's driver's license and a wallet with her debit card and electronic benefit transfer card in a storm drain one block south of Defendant's apartment.

On 26 January 2012, Anastasia Mack contacted the Greensboro Police Department regarding "a dead body inside the trunk of [a] red Cavalier" parked on Gatewood Avenue. Mack averred that her best friend Tiffany Eubanks, Defendant's romantic partner and "baby mama," showed her the body in the car earlier that week, on Tuesday or Wednesday.[1] Eubanks then drove with Mack to Defendant's apartment to pick up a cell phone. Inside the apartment, Mack observed "a big . . . bleach spot, like obviously somebody tried to clean something up" on the carpet. She also noticed that a blue rug was missing from the living room. When Mack asked Defendant "what had happened at the apartment where the bleach spot was[,]" Defendant replied "that it wasn't who we thought it was, [but] that they got somebody." Mack testified that the phrase "got somebody" meant "[t]hat you robbed them and possibly killed them."

Police searched Defendant's apartment on 26 and 27 January 2012 and found several stains on the carpet. Certain sections were "much lighter" than others and had "obviously [been]

---

[1] 22 January 2012 was a Sunday, and 26 January 2012 was a Thursday.

cleaned." Officers also photographed multi-directional blood spatter on the walls and on a lamp shade in the living room. They recovered pieces of a broken cell phone; bottles of cleaner; and a 23 January 2012 receipt for bleach, all-purpose cleaner, and a carpet cleaner. They also seized a metal table leg from a bedroom closet. Blood swabbed from the table leg matched Murphy's deoxyribonucleic acid ("DNA") profile. Teeth found on Defendant's living room floor also matched Murphy's DNA, and latent fingerprints recovered from the interior of the red Cavalier were "identical" to known prints of Murphy.

Defendant was interviewed by members of the Greensboro Police Department on 27 January 2012. A recording of the interview was admitted into evidence and played for the jury. After waiving his *Miranda* rights, Defendant confessed to killing Murphy and disposing of her body. He stated that he had intercourse with Murphy in his living room and that she had drawn a knife when he refused to pay her. Defendant then grabbed the metal table leg from behind the sofa and struck Murphy with it five times. The second blow knocked her unconscious. Defendant placed her body in the trunk of her car and parked it where it was eventually discovered by police. He threw Murphy's cell phone over a fence at his apartment building and threw her

keys in the dumpster. He placed the table leg in his grandmother's bedroom closet behind some blankets. Defendant gave Murphy's knife to Eubanks and told her where he had taken the body.

At trial, Officer W.C. Phoenix — the crime scene investigator — testified, *inter alia*, that he found a trash can in the kitchen containing receipts and a "hand-drawn map." On direct examination, Phoenix made the following statement regarding the map:

> . . . From the layout, this is a — it's the way I would draw streets. With the angles of the streets, I would indicate that this would be Lolly Lane. (Indicated). This would be Ball Street. (Indicated). This would be Gatewood Avenue. (Indicated). And the rectangle down here would be a way that I would draw a depiction of a vehicle. (Indicated).

The State sought to admit the map into evidence, and Defendant objected "to [Phoenix's] characterization of what [the map] portray[ed] . . . ." The court admitted the map and Phoenix's testimony because Defendant failed to object before Phoenix testified. Following the receipt of evidence and deliberation, the jury found Defendant guilty of first-degree murder based on (1) malice, premeditation, and deliberation as well as (2) felony murder. The trial court sentenced Defendant to life

imprisonment without the option of parole. Defendant gave notice of appeal in open court.

*Discussion*

Counsel appointed to represent Defendant is unable to identify any issue with sufficient merit to support a meaningful argument for appellate relief and asks that this Court conduct its own review of the record for possible prejudicial error. Nonetheless, counsel offers the following possible arguments on appeal:

First, counsel suggests that the trial court could have committed plain error by declining to instruct the jury on diminished capacity as a part of its felony murder instruction "after including [diminished capacity] in the instruction on first-degree murder . . . ." This suggestion is without merit. Our Supreme Court held in *State v. Roache* that it was not plain error for the trial court to decline to instruct the jury on diminished capacity in the context of felony murder where, as here, the trial court informed the jury that diminished capacity applied to the underlying offense. 358 N.C. 243, 305–06, 595 S.E.2d 381, 421 (2004) ("With this instruction the jurors would

have understood that diminished capacity could be considered as a defense for the felony murder of [the victim].”). As the trial court in this case instructed the jury on the defense of diminished capacity as it applies to first-degree murder, the *Roache* rationale is applicable here. *See id.* Accordingly, the trial court did not err, much less plainly err, in its jury instructions.

Second, counsel suggests that the trial court could have abused its discretion under Rule 403 by allowing Mack's testimony regarding her interpretation of Defendant's statement that he "got somebody." We disagree. As the State notes in its brief, Mack's testimony is proper under Rule 701 because it was "rationally based on her perception and helpful to a clear understanding of her testimony." Mack's interpretation of Defendant's statement is rational and, without that interpretation, her testimony regarding Defendant's statement would have been difficult, if not impossible, for the jury to understand. *See* N.C.R. Evid. 701. Therefore, the trial court did not abuse its discretion in admitting that testimony.

Third, counsel suggests that the trial court could have committed plain error by allowing Phoenix's lay testimony that "[the map from the kitchen trash can] would be" how he would

draw a diagram of streets in Defendant's neighborhood and "a vehicle." Again, we disagree. As the State notes in its brief, this Court held in *State v. Rick* that a crime scene technician's lay testimony regarding the similarity between impressions in the dirt and the cinder block and rock tied to the victim's body was admissible as helpful to the jury and rationally based on the technician's personal perception under Rule 701. 126 N.C. App. 612, 618-19, 486 S.E.2d 449, 452-53 (1997); *see also* N.C.R. Evid. 701. Given Phoenix's role as the crime scene investigator in this case, the *Rick* rationale is applicable here. Accordingly, the trial court did not err, much less plainly err, in admitting Phoenix's testimony.

Counsel shows to the satisfaction of this Court that she has complied with the requirements of *Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493 (1967), and *State v. Kinch*, 314 N.C. 99, 331 S.E.2d 665 (1985), by advising Defendant of his right to file written arguments with this Court and providing him with the documents necessary to do so. Defendant has not filed any written arguments on his own behalf, and a reasonable time has expired. In accordance with *Anders*, we have fully examined the record to determine whether any issues of arguable merit are present and found none. The State's evidence was sufficient to

establish Defendant's guilt of first-degree murder based on premeditation and deliberation and felony murder. *See, e.g.,* *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990) ("Among the circumstances which give rise to an inference of premeditation and deliberation are the conduct and statements of [the] defendant before and after the killing, attempts to conceal the body, ill will between the parties, and evidence that the killing was performed in a brutal and vicious manner.") (citation omitted). Therefore, we conclude this appeal is wholly frivolous and find

NO ERROR.

Judges HUNTER, ROBERT C., and ERVIN concur.

Report per Rule 30(e).